**ENRON OIL & GAS and Belco
Petroleum Corporation,
Plaintiffs,**

**v.**

**Manual LUJAN, Secretary of Interior,
United States Department of Interior,
Erasmo Gonzales, Area Manager,
Houston Area Compliance Officer, and
Mineral Management Service, Defendants.**

**Civ. A. No. H–89–1411.**

United States District Court,
S.D. Texas,
Houston Division.

Sept. 16, 1991.

Daniel K. Hedges, Porter & Clements, Houston, Tex., Deborah Bahn Price, Liskow & Lewis, New Orleans, La., Richard L. Merrill, Fabio & Merrill, Houston, Tex., William Perry Pendly, Camille Q. Bradford, Todd S. Welch, Mountain States Legal Foundation, Denver, Colo., R. Charles Gentry, Hays and Anson, Austin, Tex., for Enron Oil & Gas and Belco Petroleum Corp.

Sarah Tunnell Clark, Asst. U.S. Atty., Houston, Tex., Lisa Hemmer, U.S. Dept. of Justice, Land & Natural Resources Div., General Litigation Section, Washington, D.C., for Manual Lujan, Secretary of Interior.

## ORDER

RAINEY, District Judge.

 The Court has reviewed the Memorandum and Recommendation of Magistrate issued by Judge Stacy (Instrument # 69) as well as Plaintiffs' Notice of Objections to Memorandum and Recommendation of Magistrate (Instrument # 70) and Defendants' Opposition to Plaintiffs' Notice of Objections to Memorandum and Recommendation of Magistrate (Instrument # 71). The Court finds that the Memorandum and Recommendation of Magistrate should be adopted with the following changes:

1. The following sentence at the top of page 4 of the Memorandum: "Principles of sovereign immunity bar the states from assessing taxes on the production from the federal leases.", should be changed to read: "Principles of sovereign immunity bar the states from assessing taxes on the percentage of production from a federal or Indian lease equal to a federal or Indian lessor's reserved royalty."

2. The fourth sentence of the first paragraph on page 10 of the Memorandum should be changed to read as follows: "Royalty in the situation before us is calculated by taking the total of gross proceeds for sale of production from the lease plus tax reimbursements actually received, and multiplying the total by the applicable royalty percentage."

All other objections raised by Plaintiffs are overruled. The Court finds that the Magistrate's recommendation is further strengthened by the Fifth Circuit's recent ruling in *Mesa Operating Ltd. v. United States Dept. of Interior*, 931 F.2d 318 (5th Cir.1991). This Court therefore holds that the Defendants' Motion For Summary Judgment (Instrument # 31) should be granted. It is therefore;

ORDERED that Defendants' Motion For Summary Judgment is granted.

## MEMORANDUM AND RECOMMENDATION OF MAGISTRATE

FRANCES H. STACY, United States Magistrate Judge.

This suit was brought for review of a decision of the Interior Board of Land Appeals (IBLA), United States Department of the Interior (DOI), in which the IBLA approved the assessment of royalties on payments that Plaintiff Enron Oil and Gas Company (Enron) receives as tax reimbursements from parties to which it sells gas extracted from federal and private leases. The DOI, through its Mineral Management Service (MMS), bases its claims for such royalties on its belief that tax reimbursements are part of the total value for which Enron sells its gas. Enron claims that MMS's royalty calculations are arbitrary and capricious in that they 1) are contrary to prior case law and 2) violate the policy underlying the Natural Gas Policy Act of 1978 so that its current regulations exceed Congress' delegation of authority to the DOI.

The parties have presented to the court for consideration cross motions for summary judgment, styled Plaintiffs' Motion for Summary Judgment (Instrument # 28) and Defendants' Motion for Summary Judgment (Instrument # 31). A hearing in their regard was held before Magistrate Judge Frances H. Stacy on October 24, 1990. The Magistrate's recommendation for decision was subsequently deferred, pending Fifth Circuit review of a case involving related issues, *Mesa Operating Ltd. Partnership v. United States Dep't of the Interior*, 931 F.2d 318 (5th Cir.1991). That decision was published on May 15th. The petition filed for rehearing was denied on June 27th.

The parties' motions for summary judgment reveal that there are no genuine issues of material fact to be determined here. The only issues are legal and can be decided on the basis of the motions themselves.

## I. BACKGROUND

Enron leases various federal public domain properties in Wyoming and Utah from the Department of the Interior for the purpose of oil and gas exploration and production pursuant to the Mineral Leasing Act of 1920, 30 U.S.C. §§ 181 *et seq.* (1982), and the 1938 Omnibus Leasing Act, 25 U.S.C. §§ 396a–396g (1982). Sections 226(b) and (c) of the Mineral Leasing Act require the Secretary of the Interior to collect royalties of twelve and one-half percent "in amount or value of production removed or sold from the lease" on such leases, and section 189 authorizes him to develop necessary and proper rules and regulations, having the force and effect of statutes when not in conflict with statutes, to carry out the purposes of the act. *Marathon Oil Co. v. United States,* 604 F.Supp. 1375, 1380 (D.Alaska 1985), *aff'd,* 807 F.2d 759 (9th Cir.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987).

The department has formulated the following regulation in regard to calculating royalty:

> The value of production, for the purpose of computing royalty, shall be the estimated reasonable value of the product as determined by the Associate Director due consideration being given to the highest price paid for a part or for a majority of production of like quality in the same field, to the price received by the lessee, to posted prices, and to other relevant matters. Under no circumstances shall the value of production of any of said substances for the purposes of computing royalty be deemed to be less than the gross proceeds accruing to the lessee from the sale thereof or less than the value computed on such reasonable unit value as shall have been determined by the Secretary. In the absence of good reason to the contrary, value computed on the basis of the highest price per [unit] paid or offered at the time of production in a fair and open market for the major portion of like-quality ... gas ... produced and sold from the field or area where the leased lands are situated will be considered to be a reasonable value.

30 CFR § 206.103 (1983). The terms of the DOI–Enron leases mirror the language of the act, and require Enron to pay DOI a periodic twelve and one-half percent royalty on all "production removed or sold from the leased lands...." The leases also state that

> the Secretary of the Interior may establish reasonable minimum values for purposes of computing royalty on any or all ... gas ..., due consideration being given to the highest price paid for a part or for a majority of production of like quality in the same field, to the price received by the lessee, to posted prices, and to other relevant matters....

In addition to the federal leases, Enron holds private leases on whose production Utah and Wyoming assess ad valorem and/or severance taxes. Principles of sovereign immunity bar the states from assessing taxes on the production from the federal leases.

In marketing the natural gas production from the various leases, Enron has been able to negotiate contracts with purchasers for an amount which includes the maximum legal price for natural gas allowed by the Natural Gas Policy Act of 1978 (NGPA), 15 U.S.C. §§ 3301–3432 (1982), plus reimbursement of the state taxes it has been required to pay. This is in accordance with the NGPA, which provides at section 3320 that

> (a) ... a price for the first sale of natural gas shall not be considered to exceed the maximum lawful price applicable to the first sale of such natural gas ... if such first sale price exceeds the maximum lawful price to the extent necessary to recover.—
>
> (1) State severance taxes attributable to the production of such natural gas and borne by the seller ...; and
>
> (2) any costs of compressing, gathering, processing, treating, liquefying, or transporting such natural gas, or other similar costs, borne by the seller and allowed for, by rule or order, by the Commission.

Before the NGPA was enacted, the MMS included reimbursements for state severance taxes in its determination of gross proceeds and reasonable gas value for purposes of calculating royalties. The Interior Board of Land Appeals upheld the practice in *Wheless Drilling Co.*, 13 I.B.L.A. 21, 8 Interior Dec. 599 (1973), whereupon the DOI issued a Notice to Lessees and Operators of Federal and Indian Onshore Oil and Gas Leases (NTL–5), 42 Fed.Reg. 22610–22611 (May 4, 1977) affirming the practice, and modified its regulations expressly defining the term "gross proceeds" to include tax reimbursements. 30 C.F.R. § 206.101 (1987).

After passage of the NGPA in 1978, Enron began to calculate and pay royalties on the basis of the maximum legal price allowed under the act, not including tax reimbursements. MMS audited Enron's records in 1986 and determined that, because of the new practice, there were royalty underpayments on various of the leases dating back to 1978. It issued orders on May 7, 1986, demanding additional royalties of $1,052,-597.41 for the period of August 1, 1978, through December, 1983; on August 19, 1986, demanding late payment charges in the amount of $435,304.64; and on September 2, 1986, demanding royalties on tax reimbursements after 1983 in the amount of $435,304.64.

Enron paid the demanded royalties under protest and posted bond for the late charges. It then appealed the government's method of royalty calculation to the director of the MMS, who denied the appeal, and hence to the Office of Hearing and Appeals, Interior Board of Land Appeals. After the IBLA affirmed the director's decision, Enron filed the complaint in this action seeking review of the government's royalty demands. While acknowledging the DOI's consistent practice of including tax reimbursements in its determination of product value when calculating royalties, Enron claims that the practice in this case is contrary to prior case law, and that Congress, through the passage of the NGPA in 1978, expressly removed DOI's discretion to include state severance taxes in its calculation of natural gas value.

*Standards for Review*

Summary judgment should be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Because there are no issues of fact still before the Court, determination and application of appropriate law will decide this case.

When an action challenges the legal basis for an IBLA decision, this court must determine whether the decision below is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory ... authority...." 5 U.S.C. § 706(2); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415–17, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971); *Diamond Shamrock Exploration Co. v. Hodel*, 853 F.2d 1159, 1165 (5th Cir.1988).

■ Where a statute is silent as to the precise question at issue, the reviewing court must examine whether the agency interpretation is based on a permissible construction of the statute. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 at 843, 104 S.Ct. 2778 at 2781–82, 81 L.Ed.2d 694 at 703 (1984). While the court must give due deference to an agency's construction of a statute, reviewing courts are not obliged to affirm administrative decisions that are inconsistent with statutory mandates or their underlying policies. *Tex. Power & Light Co. v. Fed. Communications Comm'n*, 784 F.2d 1265, 1269 (5th Cir.1986).

## II. DISCUSSION

■ This is a case where relevant statutes are silent as to the precise question at issue, namely, whether the DOI may properly include tax reimbursements in its determination of production value when calculating royalties. The reviewing court in such a case must decide whether the agency determination of such value is based on a permissible interpretation of the statute.

Existing case law upholds the DOI's practice of assessing royalties on a produc-

tion value that includes tax reimbursements.

What is the value of production? Is it contract price, or contract price, plus severance? The latter is the value of production for payment of royalties.

*Hoover & Bracken Energies v. United States Dep't of Interior*, 723 F.2d 1488 (10th Cir.1983).

(T)he base value for computation of the federal royalty in this case must include both the gas purchase price and the reimbursed severance tax.

*Wheless Drilling Co.*, 13 I.B.L.A. 21, 8 Interior Dec. 599 (1973). Enron argues that *Hoover & Bracken's* reliance on *Wheless* is misplaced in light of the enactment of the NGPA in 1978, and urges that the Court adopt instead the reasoning in the *Hoover & Bracken* dissent.

As the dissent notes, Congress intended that the NGPA provide incentives to producers for the exploration and production of low-grade natural gas through, among other things, allowing producers to negotiate a sale price which could include both the maximum legal price for such gas plus reimbursement for certain post-production costs under section 110(a)(2) and/or state severance taxes under section 110(a)(1) of the Act. Enron and the *Hoover & Bracken* dissent interpret this to mean not only that Congress intended producers to receive the maximum legal price undiluted by severance taxes but, by extension, that Congress intended such taxes to be excluded from the value on which royalty is assessed.

Section 110(a)(1) of the NGPA specifically provides that the maximum legal price for gas should not be reduced by severance taxes, but nowhere in the Act does Congress indicate any concern with royalties, a fact that Enron and the *Hoover & Bracken* dissent ignore. If Congress had intended to alter the royalty calculation scheme in place at the DOI, it could have done so, but it did not. We find no specific indication that Congress meant, through the NGPA, to address assessment of royalties in any fashion.

In *Mesa Operating Ltd. v. United States Dep't of Interior*, 931 F.2d 318 (5th Cir. 1991), the Fifth Circuit addressed section 110(a)(2) of the NGPA, companion to section 110(a)(1) at issue in the present case, and held that assessment of royalties on a product value that includes post-production costs is proper. As the Court explained, "[t]he DOI-lessor simply obtains a flat percentage of all 'gross proceeds' whether they be within the ceiling price or exceed it under § 110, obtaining more royalty where the lessee obtains a greater price, including costs reimbursements, from the pipeline purchaser." The statement applies equally to the gross proceeds factor in determining product value under § 110(a)(1).

Enron argues that the case before us is distinguishable from *Mesa* because federal leases are exempt from paying severance taxes but not from post-production costs. While Enron's position is not without a certain logic, it must be remembered that the DOI does not assess royalty on some value defined by abstract distinctions between federal leases and private leases, or communitized leases or non-communitized leases. Rather, royalty is assessed on value of production as reflected by the market. In the marketplace, Enron is able to sell its gas for a maximum legal price plus reimbursement of the severance tax. If it were able only to sell the gas at some lower price, excluding tax reimbursements, then royalty would of course be assessed on the basis of a lower value. The question before us is not whether the method used by DOI to calculate royalties is the best or the fairest, but rather, whether the method chosen is a reasonable one under the regulations, and within the authority given to the department by the Congress.

In its Response to Defendant's Supplemental Notice of Additional Authority, Instrument # 67, page 3, Enron states, "[i]n the present case, the states never charged any severance taxes against the government's share, Enron never paid any, and Enron never got reimbursed for any." This is true. What is also true, but what Enron fails to add, is that Enron does not pay royalty on any reimbursements that Enron does not actually receive.

Royalty is reasonably assessed only on proceeds that are actually received. Whether or not the federal government pays state taxes on production from federal leases is unimportant. What is material is what Enron actually receives for the gas it sells. Royalty in the situation before us is calculated by taking the total of gross proceeds for sale of product for all the properties plus tax reimbursements actually received for all the properties, and multiplying the total by the applicable royalty percentage and the percentage of the lease total represented by the federal interest. That is a permissible interpretation of the statutes and regulations as they apply to the facts of this case.

### III. CONCLUSION

The DOI has consistently calculated royalties for federal natural gas leases on a value of production which reflects the market value of like-quality gas in the same field. Where the sale of such gas garners not only the maximum legal price under the NGPA, but also tax reimbursements, it is rasonable and permissible for the DOI, and not in conflict with the NGPA, to include the tax reimbursements actually received by the seller in the total amount on which the DOI assigns its royalty percentage.

The decision by the IBLA to include the value of tax reimbursements actually received in value of product for royalty calculations was neither arbitrary, capricious, an abuse of discretion, nor contrary to law. The DOI made a reasonable and permissible interpretation of its regulations governing royalties owed on federal natural gas leases, and neither the regulations nor their interpretation exceeded authority granted to it by Congress.

The Clerk shall file this instrument and mail a copy to all parties. Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), General Order 80–5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir.1982) *(en banc)*; *Ware v. King,* 694 F.2d 89 (5th Cir.1982); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). The original of any written objections shall be filed with the U.S. District Clerk, P.O. Box 61010, Houston, Texas 77208 and a copy shall be delivered to the Chambers of Judge Rainey, Room 8613 and to the Chambers of Judge Stacy, Room 7525.

Signed at Houston, Texas on this the 7th day of August, 1991.