United States Court of Appeals,

Fifth Circuit.

No. 91–6161.

ENRON OIL AND GAS COMPANY and Belco Petroleum Corporation, Plaintiffs–Appellants,

v.

Manuel LUJAN, Secretary of the Interior, United States Department of Interior, Erasmo Gonzales, Area Manager, Houston Area Compliance Office, and Minerals Management Service, Defendants–Appellees.

Nov. 30, 1992.

Appeal from the United States District Court for the Southern District of Texas.

Before JONES and BARKSDALE, Circuit Judges, and JUSTICE,[1] District Judge.

JUSTICE, District Judge:

Plaintiffs-appellants ("Enron") appeal the grant of summary judgment by the district court in favor of defendants-appellees, the Department of Interior and others (collectively "DOI"). 778 F.Supp. 348 (S.D.Tex.1991). The issue on appeal is whether it was permissible and reasonable for the DOI-lessor to include state severance tax reimbursements, paid to lessee Enron by purchasers of its gas, as part of Enron's "gross proceeds," in calculating the royalty valuation of gas production from federal leases.

## I. BACKGROUND

Enron leases federal public domain property in Utah and Wyoming from the DOI for the purposes of oil and gas exploration and production. From 1978 through 1986, Enron's charges to its oil and gas purchasers included state severance taxes assessed against Enron for production from these properties. Enron failed to include tax reimbursements from purchasers in calculating royalties owed to DOI. Following an audit, the Mineral Management Service ("MMS"), the agency within the DOI responsible for collecting and auditing royalties, determined that royalty payments were outstanding and issued orders: (1) on May 7, 1986, demanding additional royalties in the amount of $1,052,597.41 for the period of August 1, 1978, through December, 1983; (2) on August 19, 1986,

[1]District Judge of the Eastern District of Texas, sitting by designation.

demanding late payment charges in the amount of $685,253.50; and (3) on September 2, 1986, demanding royalties on tax reimbursements after 1983 in the amount of $435,304.64. Enron paid the specified royalties and late charge amounts under protest, and appealed to the MMS the method by which the DOI defined "gross proceeds" to include state severance tax charges. The MMS denied the appeal, and the Office of Hearing and Appeals, Interior Board of Land Appeals ("IBLA"), affirmed. The district court granted the government's motion for summary judgment.

We affirm.

## II. STATUTES AT ISSUE

This appeal involves two statutes: the Mineral Leasing Act of 1920 ("MLA"), 30 U.S.C. §§ 181 *et seq.* (1982), and the Natural Gas Policy Act of 1978 ("NGPA"), 15 U.S.C. §§ 3301–3432 (1982). The leases at issue were granted under the authority of the MLA and are subject to its terms and those set forth in the rules and regulations of the Department of Interior.

### A. *The Mineral Leasing Act*

Pursuant to Section 226(b) of 30 U.S.C., the Secretary of Interior is required to collect royalties, at a minimum, of twelve and one-half percent "in amount or value of production removed or sold from the lease." Section 189 of 30 U.S.C. authorizes the Secretary to promulgate all rules necessary to achieve the purposes of the MLA. Under this authority, the DOI formulated its regulation for calculations of royalty, which states in relevant part:

> The value of production, for the purpose of computing royalty, shall be the estimated reasonable value of the product as determined by the Associate Director due consideration being given to the highest price paid for a part or for a majority of production of like quality in the same field, to the price received by the lessee, to posted prices, and to other relevant matters. Under no circumstances shall the value of production ... for the purposes of computing royalty be deemed to be less than the gross proceeds accruing to the lessee from the sale thereof....

30 CFR § 206.103 (1983).

The leases signed by Enron contain the language of the MLA and require a twelve and one-half percent royalty to be paid to the DOI on all "production removed or sold from the leased lands computed in accordance with the Oil and Gas Operating Regulations." In addition, the leases state:

[T]he Secretary of the Interior may establish reasonable minimum values for purposes of computing royalty on any or all ... gas ..., due consideration being given to the highest price paid for a part or for a majority of production of like quality in the same field, to the price received by the lessee, to posted prices, and to other relevant matters....[2]

B. *The Natural Gas Policy Act*

Pursuant to the NGPA of 1978, lessees selling gas may exceed the maximum lawful price "to the extent necessary to recover [in relevant part] (1) state severance taxes...." NGPA § 3320(a)(1). The States of Utah and Wyoming, where Enron leases properties, impose severance taxes on the production of gas. Enron sells gas for a price up to the highest amount allowed under law including, pursuant to the NGPA, any state severance tax amounts attributable to such sale.

III. ANALYSIS

In this appeal, Enron challenges the DOI's decades-old method of including tax reimbursements, paid to lessee Enron by purchasers of its gas, in the royalty basis for calculation of the "value of the production removed or sold" from federal onshore leases. Enron argues that the DOI's method is arbitrary and capricious, since inclusion of tax reimbursements paid by purchasers in calculations of royalty assessments violates the NGPA, passed in 1978. In this relation, Enron alleges that the NGPA was intended to allow producers to receive the maximum legal price, undiluted by state severance taxes.

A. *Standard of Review.*

The district court's grant of summary judgment, upholding an order of the DOI, is reviewed *de novo* by this court. *Mesa Operating Ltd. Partnership v. U.S. Department of Interior,* 931 F.2d 318, 322 (5th Cir.1991), *cert. denied,* ⸺ U.S. ⸺, 112 S.Ct. 934, 117 L.Ed.2d 106 (1992). Under the Administrative Procedure Act, this court cannot set aside the DOI's findings unless they are "arbitrary, capricious, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Moreover, where the determination at issue involves a statute's interpretation, an agency's

---

[2]Oil and gas leases are "both conveyances and contracts." E. Kuntz, *Oil and Gas Law* 107 (1986). The method by which royalty is to be calculated is a contractual provision. *Id.* at 108. Under principles of contract law governing contracts between private parties, Enron would have a duty to perform the contract according to its terms, and failure to do so would constitute a breach. *See* 1 Arthur L. Corbin, *Corbin on Contracts* §§ 2, 3 (1963).

interpretation of a statute it administers should be upheld if it is based on a "permissible" construction of the statute. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc. et al.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). The agency's interpretation of its own regulation need only be reasonable, and not the only interpretation or the one the court would have reached if it were initially faced with the question. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Because the MLA and NGPA are silent on whether the DOI may properly consider state tax reimbursements in calculating "gross proceeds" for purposes of assessing royalties on Enron, this court must inquire only as to whether the agency's determination is a permissible interpretation. *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782.

B. *Inclusion of State Severance Tax Reimbursements in Calculation of Gross Proceeds is Permissible Under the Mineral Leasing Act and the Natural Gas Policy Act.*

The DOI's long-standing method of including state severance tax reimbursements from purchasers in the calculation of "gross proceeds" is a "permissible" interpretation and is supported by case law. *See Mesa Operating,* 931 F.2d 318; *Hoover & Bracken Energies, Inc.,* 52 IBLA 27, 88 I.D. 7 (1981), *aff'd, Hoover & Bracken Energies v. United States Dep't of Interior,* 723 F.2d 1488, 1492 (10th Cir.1983), *cert. denied,* 469 U.S. 821, 105 S.Ct. 93, 83 L.Ed.2d 39 (1984) (emphasis added) ("What is the value of production? Is it contract price, *or contract price plus severance?* The latter is the value of production for payment of royalties")[3]; *CIG Exploration, Inc. v. Lujan,* No. 91–CV–0096–J (D.Wyo. June 26, 1992) (granting lessor government's motion for summary judgment and rejecting lessee's claim that the DOI may not include state tax reimbursements within a federal gas lessee's gross proceeds from the sale of leasehold production for royalty calculation purposes); *Wheless Drilling Co.,* 13 IBLA 21, 80 I.D. 599 (1973) (emphasis added) ("[T]he base value for computation of the federal royalty in this case must include both the gas

---

[3]Enron attempts to distinguish *Hoover & Bracken* from the case at hand, arguing that *Hoover & Bracken* involved a communitization of the federal royalty share and other royalty shares. We agree with the decision of the IBLA that this argument is unavailing. Under 30 CFR § 206.103, the value of the Federal royalty gas is no less per unit than the value of other gas having the same characteristics. In either case, the value of a unit of gas is equivalent to what a customer will pay—and Enron's customers pay Enron the NGPA price and the state severance tax. Because Enron increased its gross receipts by allowing customers to reimburse it for state severance taxes, Enron has increased the amount of royalty it owes on its gas production.

purchase price *and the reimbursed severance tax.*").

The IBLA in *Wheless* stated its reasoning for including state severance taxes in royalty payment calculations, equally applicable to the case at bar:

> It seems obvious to us that the buyer is thus paying to the seller an amount greater than the established field price from the natural gas it purchases ... It follows, therefore, that it is reasonable to compute the Federal Royalty of the natural gas taken from this well on a unit value consisting of the field price ... plus the amount of severance tax reimbursed by the buyer.

13 IBLA 21, 80 I.D. at 603, (*quoted with approval in, Hoover & Bracken,* 723 F.2d at 1490).

The Fifth Circuit has recently held that, under § 110 of the NGPA, a seller of natural gas could be required to pay royalties on reimbursements for post-producti on costs that were not included in the ceiling price. *Mesa Operating,* 931 F.2d at 325.[4] Not distinguishing between § 3320(a)(1) and § 3320(a)(2), the court in *Mesa* held that where § 3320(a) of the NGPA allows a lessee to obtain more than the ceiling price from its purchaser, royalties should be based on the price paid: "The DOI-lessor simply obtains a flat percentage of all "gross proceeds' whether they be within the ceiling price or exceed it under [§ 3320(a) ], obtaining more royalty where the lessee obtains a greater price, including cost reimbursements, from the pipeline purchaser." *Id.*

Moreover, the DOI has consistently included state severance taxes in calculating gross proceeds for purposes of royalty calculations, and even modified its regulations defining "gross proceeds" to include tax reimbursements. 30 C.F.R. § 206.101 (1987). The IBLA has approved this method of calculation. *See Wheless Drilling Co.,* 13 IBLA 21 (1973). After *Wheless,* the DOI issued two notices affirming the approved practice. *See* Notice to Lessees and Operators of Federal and Indian Onshore Oil and Gas Leases, 42 Fed.Reg. 22610–22611 (May 4, 1977) ("[u]nder no circumstances will royalty be computed on less than the gross proceeds accruing to the lessee"); Notice to Lessees of Federal Onshore Oil and Gas Leases, 42 Fed.Reg. 4546, 4548 (1977) ("gross

---

[4]*Mesa Operating* concerned reimbursements for the costs of putting gas into marketable condition as provided for in NGPA § 3320(a)(2), whereas this case concerns reimbursements for state severance taxes provided for in § 3320(a)(1). The Fifth Circuit, however, did not differentiate between these two subsections. *Mesa Operating,* 931 F.2d at 326.

proceeds include ... tax reimbursements").[5]

C. *Inclusion of State Tax Reimbursements in "Gross Proceeds" Calculations is not Affected by Passage of the NGPA.*

Enron argues that Congress intended the NGPA to remove the DOI's discretion and authority to include the state severance taxes in calculation of "gross proceeds." This claim has been rejected by the Fifth Circuit in *Mesa Operating,* where the court, making no distinction between § 3320(a) reimbursements for state taxes (§ 3320(a)(1)), and marketable condition reimbursements (§ 3320(a)(2)), stated:

> [W]e are unconvinced that including [§ 3320(a) ] reimbursements in the royalty-bearing "gross proceeds' from the sale of gas necessarily thwarts Congress' intention to provide incentives for exploration ... Knowing that the FPC [Federal Power Commission] had allowed royalties on special relief prices in the past, it was for Congress, if it had intended the incentive to be greater than under the [Natural Gas Act], to provide that NGPA [§ 3320(a) ] payments not be subject to royalty.

931 F.2d at 326. In addition, the NGPA is silent on calculation of royalties.

## IV. CONCLUSIONS

Based on the foregoing, the district court's grant of summary judgment for the DOI was appropriate. The DOI's interpretation of the MLA is both permissible and reasonable. The DOI has historically included state severance tax reimbursements in calculating "gross proceeds" for royalty assessments, and Congress has not disrupted this practice, either expressly or impliedly. Passage of the NGPA did not disrupt, and was not intended to disrupt, this long-standing practice. Moreover, the practice of including state severance taxes in calculating "gross proceeds" does not frustrate the intent of the NGPA. Finally, the DOI's practice finds support in the law of this circuit and other circuits.

Accordingly, the judgment of the district court is, in all respects,

---

[5]Enron argues that tax reimbursements are not part of the statutory "value of production" for purposes of calculating royalties, and thus cannot be included by the DOI as part of "gross proceeds", since no state taxes are paid on the "the government's share of royalty production." This argument, rejected by the district court, the IBLA, and by this court, rests on a false distinction between "government royalty share" and "working interest share." In addition, the DOI's interpretation of "value of production" is permissible, and thus must be followed. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc. et al.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

AFFIRMED.