EDITH BROWN CLEMENT, Circuit Judge:
Santiago Valle was convicted of bribery and extortion. He appeals his convictions. We affirm.
I. FACTS AND PROCEEDINGS
On September 13, 2006, Valle was indicted on one count of bribery, in violation of 18 U.S.C. § 201(b)(2)(C), and one count of extortion, in violation of 18 U.S.C. § 872. He was tried by a jury. The evidence at trial showed that Valle was employed as an Immigration and Customs Enforcement agent, assigned as a classification officer to the Department of Homeland Security’s (“DHS”) El Paso Processing Center, an immigration holding and processing detention facility. Detained aliens were brought to the center by various agencies that provided the alien registration file for each detainee. The alien registration file contained initial reports, such as an arrest form, notice to appear, and an 1-213, which is the record-of-deportable-alien form. When turned over to the facility, a processing officer reviewed each file and determined the alien’s classification within the center, depending upon his criminal history. After processing, the alien registration files were sent to the deportation section to begin removal proceedings, and a detention file was created. Valle’s duty as a classification officer was to review each detainee’s detention file to confirm that he was properly classified. He also had access to the alien’s registration file held at the deportation section. If officials became aware of new criminal charges against a detainee that were not known when the alien was initially processed, they would contact officials of the agency that issued the warrant to determine if they wanted the alien extradited to them.
*343 In addition to his duties as a classification officer, Valle was assigned to collect intelligence. After reviewing the aliens’ 1-213 forms, he had the authority to interview detainees to obtain information about alien smuggling, contraband in the facility, or anything else that would benefit the DHS or any other agency. After gathering intelligence, Valle often generated reports and provided them to the appropriate authorities. His collateral duty to collect intelligence gave him additional authority to review alien registration files that had been sent to the deportation section.
During Valle’s employment, he met with Francisco Gutierrez-Avila (“Gutierrez”), a Mexican national, who was in custody at the facility. On the night that Gutierrez was taken into custody, he had been driving in a separate car behind his daughter who was driving a vehicle that Gutierrez owned. Both cars were stopped at a Border Patrol checkpoint, and the officers determined that some of the occupants of the car that Gutierrez’s daughter had been driving were illegal aliens. Gutierrez was detained for traveling outside the parameters authorized by his visa.
During his first meeting with Gutierrez, Valle asked him if he knew Mario or Mauricio Romero, from whom Gutierrez had borrowed money for his business. Valle told Gutierrez that he was a former brother-in-law of the Romeros, and either Mario or Mauricio Romero had asked him what could be done to help Gutierrez. During their second meeting, Valle told Gutierrez that he had removed criminal charges against Gutierrez and that Gutierrez owed him $20,000 for that action. Unaware that there had been any criminal charges against him, Gutierrez spoke to his attorney about the alleged criminal charges and Valle’s demand. After the second meeting, Valle began pressuring Gutierrez for the money. Meanwhile, because he had disclosed Valle’s request for payment to his attorney, Gutierrez was taken to a different facility where he met with federal agents. An agent from the Federal Bureau of Investigation (“FBI”) later posed as Gutierrez’s brother-in-law and gave Valle $20,000. During recorded conversations with the undercover agent, Valle told him that the money was for taking away criminal charges against Gutierrez.
Gutierrez’s 1-213 showed that he was suspected of involvement in alien smuggling. However, the 1-213 noted that an Assistant U.S. Attorney had been contacted about Valle, and the prosecutor had declined prosecution of Valle for alien smuggling. Furthermore, Immigration and Customs Enforcement had declined to interview or prosecute him.
Valle claimed that the $20,000 was for a business debt that Gutierrez owed to Mario Romero. During cross-examination of Gutierrez, defense counsel showed him an alleged promissory note, and Gutierrez acknowledged that his signature was on the note. The document was not offered into evidence.
At the close of the government’s case, Valle moved for a judgment of acquittal. He asserted specific grounds for acquittal of the bribery count, arguing that there was no evidence that Valle would personally receive anything from the deal and that the government failed to show that there were ever criminal charges against Gutierrez. Valle renewed his objection for the same reasons at the close of all evidence. Both motions were denied.
During deliberations, the jury sent a note that read: “We need the following evidence, promissory note for $20,000 dated February the 4th.” The district court gave a supplemental instruction to the jury: “Be advised that all the evidence admitted during the trial has been provid *344 ed to you. Further, the item you requested in jury note Number 1 was not offered into evidence.” Valle objected to the second sentence of the instruction, which was overruled. He also requested additional instructions, which were denied.
The jury convicted Valle of both counts. He appeals his convictions, claiming that there was insufficient evidence that he intended to receive something of value in exchange for an official act, and that the jury instruction regarding the alleged promissory note shifted the burden of proof to Valle and deprived him of a fair trial.
II. DISCUSSION

A. Bribery

(1) Standard of Review and Applicable Law

We review de novo denials of properly-made Federal Rule of Criminal Procedure 29 motions for a judgment of acquittal. United States v. Floyd, 343 F.3d 363, 370 (5th Cir.2003). In conducting our review to determine if there was sufficient evidence to sustain a conviction, the “relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
However, Valle’s sufficiency of the evidence claim necessarily involves interpreting the meaning of the bribery statute, and we review questions of statutory interpretation de novo. United States v. Kay, 359 F.3d 738, 742 (5th Cir.2004).
The starting point for interpreting a statute is the language of the statute itself. When construing a criminal statute, we must follow the plain and unambiguous meaning of the statutory language. Terms not defined in the statute are interpreted according to their ordinary and natural meaning ... as well as the overall policies and objectives of the statute.
Id. (internal quotations and footnotes omitted).
The language of the bribery statute at issue, 18 U.S.C. § 201(b)(2)(C), provides:
[wjhoever ... being a public official ... directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for ... being induced to do or omit to do any act in violation of the official duty of such official or person.
In interpreting this statute, this appeal centers on whether an official must intend to commit the violation of his official duty to be convicted under the statute.

(2) Analysis

(a) Statutory Interpretation

We first look to the plain language of the statute for guidance. For a conviction, § 201(b)(2)(C), in relevant part, requires that the official “corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value ... in return for ... being induced to do or omit to do any act in violation of [his] official duty.” By its terms, the statute does not require that the official actually commit the violation of his official duty; it only requires that he demand or agree to accept something of value in return for “being induced” to commit the violation. The statute also clearly requires that the official’s demand be “corrupt.” Nonetheless, the plain language leaves ambiguity as to whether “being induced” requires that the official intend to commit the violation of his duty when he corruptly demands something of value in *345 return for being induced, or whether it is sufficient that he corruptly demanded the payment while knowing that it was for the purpose of inducing him to violate his duty.
A statute is ambiguous if it is “susceptible to more than one reasonable interpretation or more than one accepted meaning.” Kay, 859 F.3d at 743 (internal quotations and footnote omitted). “If, after application of these principles of statutory construction, we conclude that the statute is ambiguous, we may turn to legislative history.” Id. Because the statute is susceptible to more than one reasonable interpretation regarding this issue, we turn to its legislative history.
Before 1962, §§ 201-13, relating to bribery and graft, each applied to different categories of persons. S.Rep. No. 87-2213, at 7 (1962), as reprinted in 1962 U.S.C.C.A.N. 3852, 3856. In 1962, these separate sections were revised and consolidated under one bribery statute, § 201. Id. Analyzing this legislative history, the Second Circuit noted that United States v. Myers, 692 F.2d 823, 841 (2d Cir.1982). The House Report on the revised bribery statutes clarified the meaning of the new language. “The language used in subsection ([b])[paragraph (2) of section 201][1] emphasizes that it is the purpose for which the recipient knows the bribe is offered or given when he solicits, receives, or agrees to receive it which is determinative of criminality.” H.R.Rep. No. 87-748, at 18 (1961). The report further indicated that this description of the section’s intent requirement was consistent with the interpretation held by some courts of at least one of the predecessor bribery statutes. Id. For example, the report cited Whitney v. United States, 99 F.2d 327, 331 (10th Cir.1938), in which, the Tenth Circuit affirmed an official’s bribery conviction because “[t]he evidence shows that he not only took but solicited money in connection with [an official act], and whether his action was influenced is immaterial.” H.R.Rep. No. 87-748, at 18. The applicable Senate Report did not address the issue, but it noted that § 201(b)(2) “prohibits a public official’s solicitation or acceptance of, or agreement to take, a bribe.” S.Rep. No. 87-2213, at 8 (1962), as reprinted in 1962 U.S.C.C.A.N. 3852, 3857 (emphasis added).
[a] prior statute, 18 U.S.C. § 205 (1958), had required that a Congressman receive the bribe “with the intent to have his action ... influenced.” This ... left it unclear whether the Congressman must intend to take action or need only intend to receive money with awareness of the purpose for which the briber gives it.
The present version, as revised in 1962, deletes “intent” from the description of the conduct specifically proscribed, and instead requires that the overall offense be committed “corruptly.” The specific conduct is rephrased as receipt of money in return for “being influenced” in official actions.
Valle claimed at oral argument that the Senate Report’s language that the 1962 revision “would make no significant changes of substance,” id. at 4, as reprinted in 1962 U.S.C.C.A.N. at 3853, is in conflict with the House Report.' We disagree. Clearly, the House Report was based on the then-current interpretation of the bribery statutes and did not introduce any change of substance. Furthermore, the full quotation of the portion of the Senate Report on which Valle relies is as *346 follows: “This consolidation would make no significant changes of substance and, more particularly, would not restrict the broad scope of the present bribery statutes as construed by the courts.” Id. (emphasis added).
Valle also argued that the Senate Report refers to the intents in § 201(b)(2) as the same as the intents in § 201(b)(1). The actual language of the report is that “[t]he same alternate intents are set forth here [in subsection (b)(2)] as in subsection (b)[(l)].” Id. at 8, as reprinted in 1962 U.S.C.C.A.N. at 3857. This clearly refers to the three alternate intents in the three subparagraphs, § 201(b)(1)(A), (B), and (C), that parallel the three alternate intents in the three subparagraphs, § 201(b)(2)(A), (B), and (C). None of these observations in the Senate Report conflict with the House Report.
This legislative history shows that Congress did not intend for a violation of § 201(b)(2)(C) to turn on whether the official intended to commit a violation of his duty. Instead, it indicates that Congress intended the statute to be violated when an official took the bribe, knowing that it was given for the purpose of inducing him to violate his official duty, whether or not he actually intended to follow through with the violation.

(b) Case Law

Because we find no Fifth Circuit case that addresses this issue, we look to the precedent of our sister circuits. In Myers, the Second Circuit addressed a former congressman’s defense to his conviction in the FBI’s Abscam investigation that he was “playacting,” and, thus, could not be convicted under § 201(b)(2). 692 F.2d at 840. Relying on the aforementioned House Report, the court determined that “ ‘being influenced’ does not describe the [official’s] true intent, it describes the intention he conveys to the briber in exchange for the bribe.” Id. at 841. The court further concluded that there was no breach-of-warranty defense to corruption, and “the defense of fraud [was] equally unavailable.” Id. at 842. It held that “[i]f [the defendant] was ‘playacting’ and giving false promises of assistance to people he believed were offering him money to influence his official actions, he violated [§ 201(b)(2)].” Id.[2]
Another Second Circuit case, United States v. Ford, 435 F.3d 204 (2d Cir.2006), provides further guidance regarding the proper interpretation of § 201(b)(2)(C). There, the court distinguished its holding in Myers, analyzing § 201, from the analysis of a bribery conviction under 18 U.S.C. § 666(a)(1)(B). Id. at 213 n. 6. It cited the important textual difference between the two statutes to explain why a district court had erred in reading instructions, likely based upon the Myers opinion, to a jury considering a violation of § 666(a)(1)(B). Id. “In 1962, Congress revised Section 201(b)(2) to delete explicitly an ‘intent to be influenced’ element, requiring instead that the ‘overall act be committed “corruptly”.’ In contrast, under Section 666, ‘intending to be influenced’ is an explicit element of the crime.” Id. (citation omitted).
Valle argues that Second Circuit precedent is trumped by the Supreme Court’s decision in United States v. Sun-Diamond Growers, 526 U.S. 398, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999). In that case, the Court noted that “[b]ribery requires intent ‘to influence’ an official act or ‘to be influ *347 enced’ in an official act .... [F]or bribery there must be a quid pro quo — a specific intent to give or receive something of value in exchange for an official act.” Id. at 404-05, 119 S.Ct. 1402. The Court further explained that the difference between a bribe under § 201(b) and an illegal gratuity under § 201(c) was that a bribe required a quid pro quo, or influence or inducement upon a public official, whereas an illegal gratuity only required some sort of reward in return for an official act. Id.
We disagree with Valle that Sun-Diamond calls into doubt Myers’s persuasive authority. Nothing in Sun-Diamond suggests that a conviction under § 201(b)(2) requires that an official intend to commit an official act, or violation of his duty, when he corruptly enters into a quid pro quo, an agreement to receive something of value in exchange for an official act. In Myers, despite his playacting, the defendant corruptly agreed to receive something of value in exchange for being influenced in an official act. 692 F.2d at 830-31. Furthermore, Myers does not conflict with the Court’s holding in Sun-Diamond that, in order to establish a violation of the illegal gratuity statute, “the Government must prove a link between a thing of value conferred upon a public official and a specific ‘official act’ for or because of which it was given.” 526 U.S. at 414, 119 S.Ct. 1402. Myers involved bribery, not an illegal gratuity.

(c) Valle’s Arguments

In addition to his attempts to suggest that Myers has been called into doubt by Sun-Diamond, Valle claims that (1) there were no criminal charges against Gutierrez and that he never intended to remove the nonexistent charges, and (2) Valle had no ability to remove criminal charges because the El Paso Processing Center handled only administrative aspects of the aliens’ detention there.
Valle’s first argument is the same playacting claim from Myers, and we conclude that the Second Circuit’s decision rejecting the playacting defense to § 201(b)(2) is persuasive. Therefore, we hold that an official may be convicted under § 201(b)(2), if he has corruptly entered into a quid pro quo, knowing that the purpose behind the payment that he has received, or agreed to receive, is to induce or influence him in an official act, even if he has no intention of actually fulfilling his end of the bargain.
However, Valle attempts to distinguish his case from Myers by suggesting that he had no ability to remove criminal charges from any detainee’s alien registration files, whereas the defendant in Myers was capable of committing the official acts that he promised. There is no need to consider this argument. Our review of the trial record shows that Valle was capable of violating his duty in the manner that he promised. The violation of Valle’s official duty charged in the indictment was “the removal of criminal charges from the official United States Department of Homeland Security records (alien registration file).” Valle was an Immigration and Customs Enforcement agent assigned as a classification officer with a collateral duty to gather intelligence. He had access to detainees’ alien registration files, as well as their detention files, and the authority to gather information on criminal violations, as well as newly discovered criminal charges. From these facts, a rational jury could have inferred that Valle was capable of removing criminal charges from an alien registration file, whether those were past criminal history or pending charges. Therefore, we affirm Valle’s conviction for bribery.

*348
B. Jury Instruction

We review a district court’s instructions to a jury for abuse of discretion. United States v. Clayton, 506 F.3d 405, 410 (5th Cir.2007). “A district court has broad discretion in framing the instructions to the jury and this Court will not reverse unless the instructions taken as a whole do not correctly reflect the issues and law.” United States v. McKinney, 53 F.3d 664, 676 (5th Cir.1995).
Valle claims that the district court’s supplemental instruction in response to the jury’s note, asking to see the alleged promissory note shown to Gutierrez during cross-examination, implied that Valle had an obligation to offer the note into evidence. He relies on our decision in United States v. Meadows, 598 F.2d 984, 990 (5th Cir.1979), to argue that the judge was obligated to remind the jury “of the burden and quantum of proof and presumption of innocence .... ” In Meadows, this court stated: “It is well-established that in giving additional instructions to a jury; particularly in response to inquiries from the jury, a court must be especially careful not to give an unbalanced charge.” Id. In United States v. Colatriano, 624 F.2d 686, 690 (5th Cir.1980), however, this court explained that Meadows does not support the contention that convictions must be automatically reversed when a trial court fails to recharge the jury. “Rather, the trial court’s actions must be evaluated in light of the totality of the circumstances, considering the complete instructions given to the jury.” Id.
The district court here initially gave thorough, balanced instructions regarding the presumption of innocence and the government’s burden of proof to the jury, both orally and in writing. In response to the jury’s note, the court’s response, particularly the second sentence to which Valle objected, was a direct answer to the jury’s request that incorrectly referred to the alleged promissory note as evidence. In light of the balanced initial instructions to the jury and the brevity, neutrality, and accuracy of the supplemental instruction, the district court’s decision not to remind the jury of the burden and quantum of proof and presumption of innocence did not result in a prejudicial unbalanced charge, nor did it shift the burden of proof to Valle. See id. Therefore, we hold that the district court did not abuse its discretion as to the supplemental jury instruction.
III. CONCLUSION
For the foregoing reasons, Valle’s convictions are AFFIRMED.

. The House Report actually refers to § 201(c). However, § 201 was amended in 1986, redesignating § 201(c) as § 201(b)(2). See Pub.L. No. 99-646, § 46(c) (1986). For clarity, we refer to the current designation of the statutes.

. In Myers, the language "being influenced” as opposed to "being induced,” was at issue. We find no difference between "influenced” and "induced” to suggest that this court reach a different result than the Second Circuit on the basis of this distinction.