# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 4, 2010

Charles R. Fulbruge III
Clerk

No. 09-20074

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

KEVIN XU,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before SMITH, GARZA, and CLEMENT, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Appellant Kevin Xu was convicted by a jury of conspiring to traffic in counterfeit pharmaceutical drugs, in violation of 18 U.S.C. § 371 (Count 1), introducing into interstate commerce misbranded drugs with the intent to defraud and mislead, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2) (Counts 2–4), and trafficking in counterfeit goods, in violation of 18 U.S.C. § 2320(a) (Counts 5 – 9). Xu filed a post-verdict motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) as to Counts 5 – 9 for trafficking in counterfeit Zyprexa, Tamiflu, Plavix, Casodex, and Aricept, respectively. The district court granted his motion, except as to Count 5, for trafficking in counterfeit Zyprexa. Xu appeals his conviction on that count, arguing that the evidence was insufficient to establish that the Zyprexa trademark was: (1)

registered on the principal register in the United States Patent and Trademark Office, and (2) "in use" at the time of the offense.

We review *de novo* the denial of a Rule 29 motion for a judgment of acquittal. *United States v. Valle*, 538 F.3d 341, 344 (5th Cir. 2008). In determining if there was sufficient evidence to support a conviction, the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (internal quotation marks omitted).

Section 2320 punishes "[w]hoever[] intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services." 18 U.S.C. § 2320(a)(1). To establish a violation, the Government must prove that: "(1) the defendant trafficked or attempted to traffic in goods or services; (2) such trafficking, or the attempt to traffic, was intentional; (3) the defendant used a counterfeit mark on or in connection with such goods or services; and (4) the defendant knew that the mark so used was counterfeit." *United States v. Hanafy*, 302 F.3d 485, 487 (5th Cir. 2002). Xu challenges only the third element—proof that he used a "counterfeit mark." Under the statute, a "counterfeit mark" must be "identical with, or substantially indistinguishable from, a mark registered on the principal register in the United States Patent and Trademark Office ["USPTO"] and in use." 18 U.S.C. § 2320(e)(1)(A)(ii). Thus, a rational juror must be able to conclude beyond a reasonable doubt that the mark at issue was "registered on the principal register" and "in use."

We have found no case in this circuit addressing the quantum of proof sufficient to show the third element of a violation of § 2320(a)(1). It is unsurprising that we have not previously considered this issue because proving trademark registration is usually a simple pro forma matter of offering a

certified copy of the certificate of registration. Indeed, the Department of Justice's manual on prosecuting intellectual property crimes explains that this is the preferred procedure for proving registration. UNITED STATES DEPARTMENT OF JUSTICE, PROSECUTING INTELLECTUAL PROPERTY CRIMES 101 (3d ed. 2006), *available at* http://www.justice.gov/criminal/cybercrime/ipmanual/ipma2006.pdf. Although offering certificates of registration may be the most straightforward method of proof, at least two courts have found other types of evidence sufficient. *See United States v. Park*, 164 F. App'x 584, 585–86 (9th Cir. 2006) (unpublished); *United States v. DeFreitas*, 92 F. Supp. 2d 272, 278 (S.D.N.Y. 2000).

In *Park*, the Ninth Circuit held that "registration and use at the time of conspiracy can be indirectly established . . . [by] evidence that trademarks . . . were registered and used prior to and after the conspiracy was formed . . . ." 164 F. App'x at 585. The court found that a contemporaneously filed civil complaint, alleging that the trademark holders registered and used trademarks for items similar to those found in the defendant's possession, and testimony from a law enforcement agent that the items seized from the defendant's business were identical to items registered as trademarks with the USPTO, was sufficient to prove that the trademarks were registered and in use. *Id.* Similarly, in *DeFreitas*, the court found that actual samples of both the genuine and counterfeit products, with tags affixed showing various trademarks registered by the trademark holder, coupled with testimony from the company's CEO and an expert, were sufficient proof that the marks at issue were registered and in use. 92 F. Supp. 2d at 278.

Here, the Government did not introduce a certificate of registration for Zyprexa. Xu contends that the Government was, therefore, required to produce evidence from which a jury could reasonably conclude that Zyprexa was a trademark registered on the principal register, but that it failed to do so. The Government introduced a number of exhibits of the allegedly counterfeit

3

Zyprexa, but not samples of the original, authentic drug from which a jury could infer trademark registration. The Government argues that testimony of an employee of Eli Lilly (the manufacturer of Zyprexa) was sufficient to show that the trademarks were registered on the principal register. The employee testified that he conducted tests on samples of the suspected counterfeit Zyprexa obtained from Xu. Although the employee referred to the Zyprexa as "counterfeit" and explained how the samples obtained from Xu differed from the drug produced by Eli Lilly, he never stated that Zyprexa was a mark registered on the USPTO's principal register, as required to meet the definition of "counterfeit" under 18 U.S.C. § 2320(e)(1)(A)(ii).

The closest the Government came to presenting testimony about the trademark itself was when the Eli Lilly employee was asked about the "little symbol that's next to Zyprexa" on one of the allegedly counterfeit containers of the medication. The employee stated that it was the "registered trademark symbol." This too is insufficient. First, the symbol being discussed was on a package of allegedly counterfeit goods, not authentic drugs, and no effort was made to demonstrate that authentic Zyprexa carried the same symbol. Moreover, the statement that the trademark was "registered," standing alone, is insufficient to sustain the conviction. A trademark may be registered in a number of ways. In addition to registration on the principal register, a mark may be registered on the USPTO's supplemental register, recorded with customs, or registered with state agencies. *See, e.g.*, 15 U.S.C. § 1091 *et seq.*; UNITED STATES DEPARTMENT OF JUSTICE, PROSECUTING INTELLECTUAL PROPERTY CRIMES 101. To prove that the mark was counterfeit, however, the Government was required to demonstrate that the mark was registered on the USPTO's *principal* register. 18 U.S.C. § 2320(e)(1)(A)(ii); *see also* UNITED STATES DEPARTMENT OF JUSTICE, PROSECUTING INTELLECTUAL PROPERTY CRIMES 101 (noting that federal registration on the principal register is a "jurisdictional element" that must be satisfied to charge a § 2320 violation). The Eli Lilly

4

employee's statement did nothing to establish that the mark was listed on the principal register, as opposed to being registered in some other manner.

The Government also contends that Zyprexa's compliance with FDA requirements indicates registration on the principal register. They point to testimony from the Eli Lilly employee that the potency range of each Zyprexa tablet is a "registered commitment." No testimony was offered defining a "registered commitment." Nor did the Government make any attempt to show that a "registered commitment" has anything to do with registration on the USPTO's principal register, as opposed to simply some form of FDA requirement, as indicated by the employee's testimony. A statement that a drug potency level is a "registered commitment" is simply not evidence of registration on the principal register.

For the foregoing reasons, we find that a rational juror could not have found beyond a reasonable doubt that the Zyprexa mark was registered on the USPTO's principal register. Because we reverse on this ground, we need not address Xu's argument that there was no evidence that the mark was "in use" at the time of the offense.

Accordingly, the judgment of conviction on Count 5 is VACATED and the case is REMANDED for resentencing consistent with this opinion.