# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 12-41200

United States Court of Appeals
Fifth Circuit

**FILED**
February 14, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

GERARDO CASTILLO-CHAVEZ, also known as Cachetes, also known as
Armando Garcia,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:08-CR-244-24

Before JONES, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:*

A jury convicted Defendant-Appellant Gerardo Castillo-Chavez
("Castillo") of conspiracy to possess cocaine and marijuana, in violation of 21
U.S.C. §§ 841(b)(1)(A) and 846 (Count 1); two counts of interstate and foreign
travel in aid of a business enterprise involving controlled substances, in
violation of the Travel Act, 18 U.S.C. § 1952(a)(2)(B) (Counts 28 and 33); and
two counts of possessing and discharging a firearm in furtherance of a crime of

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 12-41200

violence and a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), (C)(i) (Counts 29 and 34).  The district court sentenced Castillo to life imprisonment on Count 1, concurrent terms of 20 years of imprisonment on Counts 28 and 33, and a consecutive 40-year term of imprisonment on Count 34, to be followed by five years of supervised release.[1]  Castillo appeals his conviction and sentence.  We AFFIRM.

<u>Factual and Procedural History</u>

The Gulf Cartel, a drug trafficking organization, moves large quantities of cocaine and marijuana across the Mexican border into the United States.  The enforcement arm of the Gulf Cartel, the Zetas, includes individuals known as "sicarios" (hired assassins).  In the spring of 2006, Miguel Trevino, a high-ranking commander in the Zetas who operated in the Nuevo Laredo area, ordered a group of sicarios to kill Jesus "Chuy" Resendez ("Chuy Resendez"), a member of the rival Sinaloa Cartel.  On March 18, 2006, a group of three sicarios arrived at an address in Laredo, where Chuy Resendez resided.  After Gerardo Ramos, Chuy Resendez's nephew, informed the sicarios that his uncle was not home, the sicarios opened fire, wounding Ramos.  On March 31, 2006, a group of sicarios again arrived at the same address in Laredo, and again the sicarios opened fire, this time wounding Julio Resendez, Chuy Resendez's brother.  On April 2, 2006, the sicarios located Chuy Resendez, and shot and killed him, as well as Chuy Resendez's other nephew, Mariano Resendez.  The Government alleged that Castillo was a sicario involved in all three shootings and that the shootings were carried out in furtherance of the Gulf Cartel's drug trafficking enterprise.

---

[1] Pursuant to the Government's motion, the district court vacated Castillo's conviction on Count 29 at sentencing.  Accordingly, we will not address it further.

No. 12-41200

Pertinent to this appeal, a grand jury indicted Castillo (under the name "Armando Garcia, a/k/a 'Cachetes'"), charging him with one drug conspiracy count (Count 1), one Travel Act count based on the April 2, 2006, shooting of Chuy Resendez and Mariano Resendez (Count 35), and one firearm count based on the April 2, 2006, shooting (Count 36). Two superseding indictments followed; the charges against Castillo remained the same.

Castillo first proceeded to trial on January 25, 2010. The Government argued that Castillo worked as a sicario for the Zetas and presented evidence that Castillo participated in the shooting deaths of Chuy Resendez and Mariano Resendez on April 2, 2006, and did so in furtherance of the Gulf Cartel's drug trafficking enterprise. Castillo did not dispute that a group of sicarios shot and killed Chuy Resendez and Mariano Resendez. Instead, Castillo argued that he was not a sicario and that he was not "Armando Garcia, a/k/a 'Cachetes.'" The jury acquitted Castillo of the firearm count (Count 36) and could not reach a verdict on the drug conspiracy count (Count 1) or the Travel Act count (Count 35).

The Third Superseding Indictment was filed on February 17, 2010. Counts 1, 35 (later dismissed), and 36 (later dismissed) remained as they were in the prior superseding indictment. The indictment included four new counts: one Travel Act count (Count 28) and one firearm count (Count 29) (later dismissed) based on the shooting of Ramos on March 18, 2006, and one Travel Act count (Count 33) and one firearm count (Count 34) based on the shooting of Julio Resendez on March 31, 2006.

Castillo filed, and the district court granted, a motion to dismiss the charge on which Castillo was acquitted at the first trial, the firearm count based on the April 2, 2006, shooting (Count 36). Pertinent here, Castillo's motion to dismiss Counts 1, 28, 33, and 34, based upon his argument that that the prosecution of those charges would violate the Double Jeopardy Clause,

No. 12-41200

was denied.  Castillo appealed, and we affirmed.  *See United States v. Garcia*, 432 F. App'x 365, 366 (5th Cir. 2011) (unpublished).

The second trial commenced on January 17, 2012.  The Government sought to prove that Castillo was part of a group of sicarios who, in furtherance of the Gulf Cartel's drug trafficking enterprise, participated in the shootings of Ramos on March 18, 2006, and Julio Resendez on March 31, 2006.  To this end, over Castillo's objections, the Government presented the testimony of Castillo's co-conspirators.[2]  Castillo moved for a judgment of acquittal after the Government rested its case and again after the close of all evidence.  The district court denied both motions.  Castillo was convicted and subsequently sentenced by the district court.

## Discussion

Because Castillo timely objected to the district court's evidentiary rulings that he challenges on appeal, we review them for abuse of discretion. *See United States v. Diaz*, 637 F.3d 592, 599 (5th Cir. 2011).  If we find error, we must then decide whether the error was harmless.  *Id.*  We also review a district court's denial of a motion for a continuance and denial of a motion for a mistrial for abuse of discretion.  *United States v. Stalnaker*, 571 F.3d 428, 439 (5th Cir. 2009) (motion for continuance); *United States v. Valles*, 484 F.3d 745, 756 (5th Cir. 2007) (motion for mistrial).

**1. Evidentiary Rulings**

A. Grenade Attack Evidence

---

[2] This evidence included: (1) Rosalio Reta's testimony that Castillo had participated in a grenade attack in Monterrey, Mexico; (2) Raul Jasso's testimony concerning statements made to the police by Gaby Cardona implicating Castillo; (3) Jasso and Reta's testimony regarding Castillo's role in the April 2, 2006, shootings of Chuy Resendez and Mariano Resendez; and (4) Mario Alvarado's testimony that he feared for his safety as a result of testifying against Castillo.

No. 12-41200

Castillo challenges the admission of evidence regarding a grenade attack in which he was allegedly involved.  According to Reta's testimony, he and three other sicarios, including Castillo, went to El Punto Vivo Bar, in San Nicolas, Nuevo Leon, discharged their grenades and firearms, and killed four people.  After the attack, the group went to a nearby gas station where a surveillance system captured video of the four men.

Castillo moved to exclude this evidence at trial and renews his arguments on appeal, asserting that: (1) under Rules 401 and 402, the grenade attack was irrelevant; (2) under Rule 403, the prejudicial effect of the evidence substantially outweighed its probative value; and (3) under Rule 404, the grenade attack was extrinsic, and thus improper character evidence, because it was not listed in the Third Superseding Indictment.[3]  With respect to the gas station surveillance video, Castillo argues that the evidence was improperly admitted because the video was not properly authenticated under Rule 901(a) and was disclosed to him only one week before trial, denying him due process.

The district court did not abuse its discretion in admitting evidence concerning the grenade attack.  The central issue at trial was whether Castillo was a sicario for the Zetas, and the evidence concerning the grenade attack makes the fact that Castillo was a sicario more probable than it would be without this evidence.  *See* FED. R. EVID. 401.  Moreover, because Castillo's violent activities in furtherance of the conspiracy were at issue, the district court acted within its discretion in concluding that the evidence was not unfairly prejudicial.  *See* FED. R. EVID. 403; *see also United States v. Baptiste*, 264 F.3d 578, 590 (5th Cir. 2001) ("The argument for inadmissibility of the

---

[3] At the outset, we note that Castillo's argument that the evidence was extrinsic because it was not listed as an overt act in the indictment is meritless because the Government need not list its evidence in the indictment.  *See United States v. Powers*, 168 F.3d 741, 749 (5th Cir. 1999).

5

murders and attempted murders under [Rule] 403 because of their prejudicial effect is . . . easily rejected. . . . Although the evidence of the murders and attempted murders was prejudicial, it was necessary for the jury to understand the brutal nature of the conspiracy."), *withdrawn in non-relevant part*, 309 F.3d 274 (5th Cir. 2002).

Turning to the Rule 404(b) argument, even assuming without deciding that the district court abused its discretion in ruling that the evidence was intrinsic and, therefore, outside the strictures of Rule 404(b), we conclude any such error is harmless. Under Rule 404(b), this evidence, even if extrinsic, could be admitted for the purpose of proving Castillo's knowledge of and intent to participate in the charged conspiracy. *See Diaz*, 637 F.3d at 599; *see also* FED. R. EVID. 404(b).

Further, a proper foundation existed for admitting the gas station surveillance tape. Because Reta had knowledge about the individuals and the gas station and explained that the video was an accurate depiction of the events, his testimony authenticated the video. *See* FED. R. EVID. 901(b). Also, the video was relevant because it made Castillo's presence in the area, and therefore participation in the conspiracy, more likely than not. FED. R. EVID. 401. Accordingly, the district court did not abuse its discretion in admitting the surveillance tape.[4] *See United States v. Isiwele*, 635 F.3d 196, 200 (5th Cir.

---

[4] The district court's denial of Castillo's motion for a continuance to "verify" the accuracy of the surveillance video was also without error. Although the Government disclosed the video shortly before trial, the Government explained that it had requested the video from the Mexican gas station over two years prior to the trial, but had only received it the week prior to the trial and that the Government produced the video to Castillo the same day it received it. Finding "good cause" for the late disclosure, and finding that steps to "verify" the video with the Mexican gas station could take another two years, the district court concluded that a continuance was not warranted. Castillo did not offer at trial, and does not offer now, any reason that a further investigation would reveal inaccuracies in the video. As a result, the district court did not abuse its discretion in denying the continuance. *See Stalnaker*, 571 F.3d at 439 ("If the challenged decision is neither arbitrary nor

2011) ("Once the proponent has made the requisite showing, the trial court should admit the exhibit . . . in spite of any issues the opponent has raised about flaws in the authentication. Such flaws go to the weight of the evidence instead of its admissibility." (citation and internal quotation marks omitted)).

B. <u>Hearsay Challenge</u>

Castillo also maintains that the district court erred in admitting evidence from a witness, Jasso, regarding statements made by another sicario, Cardona. Jasso testified that Cardona had confessed to his participation in the conspiracy at issue here and had received a life sentence. Jasso also testified that Cardona had identified Castillo to the police as being a co-conspirator in connection with the investigation of the April 2 shooting. The district court overruled Castillo's hearsay objection to the first statement, but sustained his objection to the second. The district court also ordered that this second statement be stricken from the record and instructed the jury to disregard it. Castillo moved for a mistrial on Confrontation Clause grounds, which the district court denied.

We review a Confrontation Clause challenge *de novo*, subject to harmless error analysis. *United States v. Alvarado–Valdez*, 521 F.3d 337, 341 (5th Cir. 2008). Jasso's testimony that Cardona confessed to his own participation, even if erroneously admitted, is harmless error as to Castillo.

Turning to the second statement, even assuming it constituted hearsay in violation of the Confrontation Clause, the district court did not abuse its discretion in denying the motion for mistrial because, when viewed in light of the evidence as a whole, the statement was not "so highly prejudicial that it would have had a substantial impact on the jurors' verdict." *See United States*

---

unreasonable, we must uphold the trial court's decision to deny the continuance, even when we consider the decision to be a harsh one." (citation and internal quotation marks omitted)).

*v. Delgado*, 672 F.3d 320, 340 (5th Cir.) (en banc) (citation and internal quotation marks omitted), *cert. denied*, 133 S. Ct. 525 (2012). Jasso's testimony regarding Cardona's statement to the police that Castillo was involved in the April 2 shooting "did little more than repeat a fact of which the jury was already well aware." *See id.* Further, Castillo was not charged in connection with the April 2 shooting and any error was mitigated when the district court immediately sustained defense counsel's objection to Jasso's testimony and instructed the jury to disregard it. *See id.* Accordingly, the district court did not abuse its discretion in denying Castillo's motion for a mistrial.

C.  Prosecutor's Questions Concerning Witness's Fear

Castillo argues that the prosecutor improperly elicited testimony from Alvarado regarding whether he had placed himself in danger by testifying. The district court overruled Castillo's objection and denied his motion for mistrial because there was nothing in the line of questioning that implied that Castillo would take action against the witness. Castillo also argues that the prosecutor's closing remarks were inappropriate to the extent they sought to bolster the credibility of the Government's witnesses by pointing out that they could face retribution from the Zetas and the Gulf Cartel on account of their testimony. The district court denied Castillo's motion for a mistrial based on these comments.

We review properly preserved allegations of prosecutorial misconduct in two steps. First, we determine, on *de novo* review, whether the prosecutor made an improper remark. *United States v. McCann*, 613 F.3d 486, 494 (5th Cir. 2010). If an improper remark was made, we then must decide, under an abuse-of-discretion standard, whether the remark affected the substantial rights of the defendant. *Id.*

Turning to Alvarado's testimony, neither Alvarado nor the prosecutor implied that Castillo would be involved in any sort of retribution for Alvarado's

testimony.    Moreover, the questioning arose only after defense counsel attacked Alvarado's motive to lie.  As a result, defense counsel opened the door to Alvarado's motives in testifying and the prosecutor merely sought to rehabilitate Alvarado through questions concerning whether he feared for his safety after testifying against Castillo.  Furthermore, even if the questioning was improper, Castillo fails to establish that the evidence affected his substantial rights, especially in light of the fact that the evidence did not concern Castillo.  Accordingly, the district court did not abuse its discretion in denying the motion for a mistrial.  *See id.*

Castillo similarly fails to show that the prosecutor's closing argument constituted misconduct.  A prosecutor is permitted to "argue fair inferences from the evidence that a witness has no motive to lie, but cannot express a personal opinion on the credibility of the witnesses."  *Id.* at 495 (citation and internal quotation marks omitted).  The prosecutor's statements concerning the potential retribution faced by the witnesses from the Zetas and the Gulf Cartel as a result of their testimony were fairly drawn from the evidence describing the potential consequences of cooperating with the Government.  In addition, the Government is permitted to "argue that the jury can or should infer from the relevant facts that a witness does not have a reason to lie."[5]  *United States v. Martinez–Larraga*, 517 F.3d 258, 271 (5th Cir. 2008).  Accordingly, the prosecutor did not engage in misconduct and the district court

---

[5] Castillo's reliance on *Gradsky v. United States*, 373 F.2d 706 (5th Cir. 1967) is misplaced.  Unlike in *Gradsky* where the prosecutor wrongly stated that "the government has every opportunity to check out and to judge the credibility and truthfulness of [the testifying co-conspirators] in this case, and in that context, we offered you their testimony," nothing in the prosecutor's remarks here indicated that the prosecutor personally was vouching for the credibility of the witnesses' testimony.  *See id.* at 710 (quoting prosecutor's statement).

acted within its discretion in denying the motion for a mistrial. *See McCann*, 613 F.3d at 494.

## 2. Double Jeopardy

Castillo challenges the introduction of testimonial evidence concerning his participation in the April 2 murder of Chuy Resendez under the collateral estoppel component of the Double Jeopardy Clause. Pertinent here, Castillo previously sought the dismissal of Counts 1, 28, 33, and 34 based on this same theory, arguing that because the jury acquitted him on the firearm count in the former indictment it necessarily decided that he was not a sicario and that he was not involved in the conspiracy. *Garcia*, 432 F. App'x at 366. Affirming the district court's denial of Castillo's motion to dismiss, we concluded that "Castillo has shown *only a possibility* that the jury could have founded its verdict of acquittal upon a finding that he was not a sicario and was not involved in the conspiracy. Such is insufficient to invoke the doctrine of collateral estoppel." *Id.* (emphasis added) (explaining that "Castillo has not shown that it would have been irrational for the jury to have grounded its verdict of acquittal [concerning the firearm count] on a determination that the Government failed to prove the possession element of the offense").

To the extent Castillo seeks to essentially relitigate this issue, we are prevented from considering his arguments under the law-of-the-case doctrine. *See United States v. Grosz*, 76 F.3d 1318, 1329 (5th Cir. 1996) ("[T]he law of the case doctrine prohibits this court from reconsidering an earlier decision denying a double jeopardy claim raised during an interlocutory appeal."). Further, although the prior jury acquitted Castillo of the charge of possessing a firearm in connection with the April 2 shooting (Count 36), the evidence at the subsequent trial revolved around Castillo's involvement in the planning of

10

and scouting for this shooting.[6]    The jury's consideration of Castillo's involvement in the April 2 shooting—and its potential use of this evidence to find Castillo guilty of the charged conspiracy—in no way disturbs the prior jury's acquittal of Castillo for the firearm offense.  Therefore, there was no error in allowing introduction of the facts surrounding the April 2 shooting.

Castillo's challenge of the district court's instruction on this matter is also without merit.  Despite Castillo's request, the district court refused to instruct the jury that Castillo had been acquitted of the events described by Jasso, reasoning that Jasso's testimony related to events that were part of the overall conspiracy—a charge of which Castillo was not acquitted.  Instead, the court instructed the jury that it would hear testimony involving the defendant's alleged conduct on April 2, 2006, and reminded the jury that it could consider the evidence to determine if Castillo was guilty of the charged offenses, but that it should not consider whether Castillo was guilty as to the events or offenses of April 2.

The court's refusal to instruct the jury that Castillo had been acquitted of the events of April 2 was not an abuse of discretion.  *See United States v. Freeman*, 434 F.3d 369, 377 (5th Cir. 2005).  Castillo was only acquitted of the use and possession of a firearm on April 2, 2006; he was not acquitted of being involved in the search for Chuy Resendez.  Indeed, the fact that the jury hung on Count 35 (the Travel Act count relating to the April 2, 2006, shooting) in the first trial belies any notion that Castillo was acquitted of the conduct Jasso described.

---

[6] Indeed, Jasso did not explicitly testify that Castillo possessed a firearm on April 2, 2006, and the district court ruled at trial that the Government was collaterally estopped from arguing or presenting evidence that Castillo possessed a firearm in connection with the April 2 shooting.

No. 12-41200

## 3. Motion for Acquittal

We review *de novo* a district court's denial of a motion for a judgment of acquittal. *United States v. Xu*, 599 F.3d 452, 453 (5th Cir. 2010). The evidence at trial is sufficient when, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

### A. Conspiracy Conviction (Count 1)

With respect to the drug conspiracy charge, the Government was required to prove that: (1) two or more persons, directly or indirectly, reached an agreement to possess with the intent to distribute a controlled substance; (2) Castillo knew of the agreement; (3) Castillo voluntarily participated in the agreement; and (4) the overall scope of the conspiracy involved at least 5 kilograms of a substance containing cocaine and/or 1,000 kilograms of a substance contained marijuana. *See United States v. Jimenez*, 509 F.3d 682, 689 (5th Cir. 2007); *see also* §§ 841(a)(1), (b)(1)(A), and 846. A reasonable jury may "infer the existence of a conspiracy from the presence, association, and concerted action of the defendant with others." *United States v. Curtis*, 635 F.3d 704, 719 (5th Cir. 2011) (citation and internal quotation marks omitted).

Castillo does not deny that there was a conspiracy that involved the necessary quantity of drugs, but instead only argues that the evidence was insufficient to establish that he knew about[7] or participated in[8] the conspiracy.

---

[7] Castillo's suggestion that he personally did not know of the amount of drugs involved is inapposite because a conviction under §§ 841 and 846 does not require the Government to prove that the defendant knew of the quantity of drugs, only that the necessary quantity was involved. *See United States v. Patino–Prado*, 533 F.3d 304, 309–10 (5th Cir. 2008).

[8] Castillo's argument that there was no evidence that he participated in any overt act listed in Count 1 of the Third Superseding Indictment is inapposite. Proof that Castillo

No. 12-41200

Importantly, however, the evidence need not link Castillo *directly* to the drugs themselves to be sufficient for a conspiracy conviction.  "[T]here are many different roles that participants in a drug conspiracy may play, for example: supervisor and manager, distributor, collector, courier, gunman and enforcer, and firearms procurer and storer." *United States v. Cole*, 423 F. App'x 452, 459 (5th Cir. 2011) (unpublished); *see also United States v. Tolliver*, 61 F.3d 1189, 1195 (5th Cir. 1995), *vacated on other grounds*, *Moore v. United States*, 519 U.S. 802 (1996).[9]

Here, the evidence viewed in the light most favorable to the Government would allow a reasonable jury to conclude that Castillo was a sicario for the Zetas who participated in activities that furthered the Gulf Cartel's drug trafficking enterprise.  For example, co-conspirator Wenceslao Tovar, a self-identified sicario, testified that he met and spent time with Castillo at a "training camp" that was restricted to members of the Zetas.  Julio Resendez, a shooting victim, identified Castillo as being involved in the shootings on March 18 and March 31, which occurred because the sicarios were looking for Chuy Resendez, a member of the rival Sinaloa Cartel.  Both Jasso and Reta testified that Castillo was part of that group of sicarios who sought out and killed Chuy Resendez at the behest of Trevino.  Jasso testified that Castillo was part of a group that was actively trying to locate Chuy Resendez.  Further, according to Reta, Castillo "[b]ragg[ed] about" taking part in Chuy Resendez's

participated in an overt act is not required to convict him of the charged drug conspiracy. *See United States v. Shabani*, 513 U.S. 10, 11 (1994).

[9] Other circuits similarly recognize the various roles of individuals in a drug conspiracy. *See, e.g.*, *United States v. Jenkins*, 419 F.3d 614, 620 (7th Cir. 2005) ("Different people play different roles in a drug conspiracy, be it supplier, lookout, courier, or enforcer."); *United States v. Soto–Beniquez*, 356 F.3d 1, 18 (1st Cir. 2003) ("Advancing the aim of the conspiracy can involve performing ancillary functions such as processing and cooking drugs, procuring weapons, collecting monies, enforcing discipline, chastising rivals, accounting, and the like, as long as such actions are performed with the aim of furthering the conspiracy.").

murder. Reta also testified that Castillo participated in a grenade attack at a bar on behalf of the Zetas, and this testimony was corroborated by a surveillance video placing Castillo near the scene of the crime. Importantly, the fact that the evidence consisted largely of testimony from co-conspirators does not render the evidence insufficient. *See United States v. Turner*, 319 F.3d 716, 721 (5th Cir. 2003). In light of this evidence, a rational jury could conclude that Castillo's participation in the described shootings was part of the Gulf Cartel's "war" with the Sinaloa Cartel and, therefore, that Castillo voluntarily participated in the activities of the Zetas and knew that those activities were conducted in furtherance of the drug trafficking business.[10]

B. Travel Act and Firearm Convictions (Counts 28, 33 and 34)

To convict Castillo on the Travel Act counts, the Government was required to prove that: (1) Castillo traveled in interstate or foreign commerce or used any facility in interstate or foreign commerce; (2) with the specific intent to commit a crime of violence in furtherance of "a business enterprise" involving a controlled substance; and (3) performed or attempted to perform

---

[10] Castillo also contends that the district court erred in not giving a multiple conspiracies instruction. This instruction is relevant where the defendant is charged in an overall conspiracy but the evidence only shows that the defendant was involved in a separate conspiracy. *See United States v. Carbajal*, 290 F.3d 277, 291 n.25 (5th Cir. 2002). Because Castillo timely requested a multiple conspiracies instruction, we review for an abuse of discretion and consider whether there is any evidence supporting the issuance of the charge. *See United States v. Castaneda–Cantu*, 20 F.3d 1325, 1333–34 (5th Cir. 1994); *see also United States v. Stowell*, 953 F.2d 188, 189 (5th Cir. 1992) (explaining that there must be more than a "scintilla" of evidence supporting a defense theory because the evidence "must be sufficient for a reasonable jury to rule in favor of the defendant on that theory"). The district court denied this instruction after concluding that there was not an evidentiary basis for a separate conspiracy apart from the charged conspiracy involving the Gulf Cartel. We agree. Here, almost all of the evidence pertained to the charged conspiracy and involved Castillo's conduct related to the shootings in furtherance of the conspiracy. Furthermore, Castillo's conviction for the Travel Act counts (which required the jury to find that Castillo was involved in interstate or foreign commerce) undercuts Castillo's suggestion that the jury relied solely on his arrest in Houston to convict him of the charged conspiracy. Accordingly, the district court did not abuse its discretion in declining to give a multiple conspiracies instruction.

No. 12-41200

the crime of violence. *See* § 1952(a)(2)(B). With regard to the Travel Act convictions, Castillo does not dispute that the crimes of violence—the attempted murder of Ramos (Count 28) and the attempted murder of Julio Resendez (Count 33)—were committed in furtherance of the Gulf Cartel's drug trafficking enterprise, as required by the second element. He also does not contest that he traveled in interstate commerce in satisfaction of the jurisdictional element of the crime. Instead, Castillo argues that there was insufficient evidence to establish that he participated in either crime of violence.

Based on the evidence at trial, a rational jury could conclude that Castillo participated in these crimes of violence. While Castillo points out that Ramos could not identify him as the person who shot him, Julio Resendez, an eye-witness, testified that Castillo was in the car with a group of men who shot Ramos on March 18. Julio Resendez also testified that Castillo fired shots at him on March 31, 2006.[11] Therefore, in addition to the evidence of Castillo's more general involvement with the Zetas described above regarding Count 1, which made it more likely that Castillo was involved in the shootings for the purpose of furthering the drug trafficking business, the evidence of Castillo's involvement with the events of March 18 and March 31 is sufficient to convict under § 1952 as to both Count 28 and Count 33.[12]

---

[11] Castillo also improperly seeks to impugn Julio Resendez's credibility on appeal. When reviewing the sufficiency of the evidence, we assume that the jury made all credibility determinations in the light most favorable to the Government. *See United States v. Mendoza*, 522 F.3d 482, 489 (5th Cir. 2008).

[12] Because we conclude that the evidence was sufficient to convict Castillo under § 1952, we need not decide whether the evidence was sufficient to convict him under theories of co-conspirator or aiding-and-abetting liability.

No. 12-41200

To establish Castillo's guilt with respect to the firearm offense, the Government had to prove that: (1) Castillo committed either a crime of violence (i.e., Count 33) or a drug trafficking crime (i.e., Count 1); and (2) Castillo knowingly discharged a firearm during and in relation to the commission of the crime of violence or the drug trafficking crime. *See* § 924(c)(1)(A)(iii). The same evidence that supports Castillo's convictions under the Travel Act charges supports his conviction for the firearm offense. Specifically, based on the evidence at trial, a reasonable jury could have concluded that he possessed a firearm when he shot Julio Resendez.[13]

**4. Sentencing**

Castillo challenges two of the district court's findings with respect to his sentence. We review the factual findings for clear error. *United States v. Cisneros–Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008) (explaining there is no clear error if the finding is plausible in light of the record as a whole).

Castillo challenges the district court's findings as to the amount of drugs attributable to him. Castillo's presentence investigation report recommended a base offense level of 38 for Count 1, which applies to a defendant convicted of a drug crime to whom 150 kilograms or more of cocaine are attributable. *See* U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2D1.1(c)(1) (2011). Under U.S.S.G. § 1B1.3(a)(1), the base offense level for a conspiracy is determined based on "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity[] that occurred during the commission of the offense . . . , in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." Based on the evidence, the district court's findings that Castillo worked as an

---

[13] Because we conclude that the district court did not reversibly err on any issue presented in this appeal, Castillo's argument based on the "cumulative error doctrine" is meritless.

No. 12-41200

enforcer in furtherance of the conspiracy and that there were massive quantities of drugs involved in the conspiracy were not clearly erroneous. Accordingly, the district court did not err in adopting the base offense level of 38 for Count 1.

Castillo also challenges the district court's finding with respect to the Travel Act counts (Counts 28 and 33) that he received something of pecuniary value for undertaking the attempted murders of March 18 and 31. This finding was not clearly erroneous in light of the evidence suggesting that the sicarios were paid $10,000 for each person killed, that 100 pounds of marijuana and one ounce of cocaine were used as compensation for a murder, and that the sicarios were paid $50,000 to kill Chuy Resendez. Accordingly, the four-level upward adjustment for Counts 28 and 33 was proper. *See* U.S.S.G. § 2A2.1(b)(2).

## Conclusion

For the reasons explained above, Castillo's convictions and the district court's sentence are AFFIRMED.