# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 4, 2011

Lyle W. Cayce
Clerk

No. 10-10544

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CARLOS JOEL DIAZ,

Defendant - Appellant

Appeals from the United States District Court
for the Northern District of Texas

Before GARWOOD, ELROD, and SOUTHWICK, Circuit Judges.

Leslie H. Southwick, Circuit Judge:

Carlos Joel Diaz was convicted after a jury trial of conspiring to possess with the intent to distribute 100 kilograms or more of marijuana. He appeals and alleges error as to restrictions placed on cross-examination, on alleged opinion testimony about his mental state, and on a clear but corrected error in a jury instruction. He also asserts that the evidence was insufficient and his sentence was substantively unreasonable. We AFFIRM.

## STATEMENT OF FACTS

On the evening of April 18, 2007, in Dallas, Texas, two undercover agents of the Drug Enforcement Agency drove an 18-wheeler tractor-trailer rig to a gas station. The trailer contained more than 1,000 pounds of marijuana. A member

No. 10-10544

of the Banegas drug trafficking organization led the agents a short distance away, to an unlighted street next to Brian's Auto Sales. The agents unloaded duffle bags of marijuana from the trailer and handed them to members of Banegas, who then placed them inside the back of a white van.

While the transfer occurred, the defendant Carlos Joel Diaz stood on the street corner near the tractor-trailer rig and the white van. There was testimony that he looked from side to side, observing vehicles that drove by. At one point, Diaz walked to where he could watch the transfer of the drugs into the van. After the marijuana had been loaded, Diaz closed the van doors.

Two members of Banegas met the agents back at the gas station, where a payment of $17,000 was to be made. Instead, police arrived and detained the members of Banegas, as well as Diaz. In Diaz's pocket were keys to a Ford F-150, a Banegas vehicle that was to be used to transfer some of the marijuana from the van to another location. Diaz was released after questioning.

Two months later, a federal grand jury indicted Diaz and seven others with one count of conspiring to possess with the intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(vii). Diaz was not tried at that time.

Nearly two years later, Diaz was stopped for a traffic violation. The officer arrested Diaz after learning of the outstanding warrant issued in connection with the drug charge. His jury trial began in January 2010. He was found guilty and sentenced to 121 months of imprisonment. A timely appeal followed.

## DISCUSSION

### I.   *Limitations of Cross-Examination*

Diaz argues that his Sixth Amendment right to confrontation was violated when the district court did not permit him to cross-examine witnesses about alternate explanations for his presence during the drug transaction. Diaz contends that he could not cross-examine two witnesses, Drug Enforcement

2

No. 10-10544

Special Agent Luis De La Cruz and Officer Donnie Morton of the Fort Worth Police Department, about his status as an illegal immigrant or his employment at Brian's Auto Sales. This testimony allegedly would have been relevant to witness credibility and the adequacy of the government's investigation.

We review alleged violations of the Confrontation Clause of the Sixth Amendment *de novo*, applying a harmless error analysis. *United States v. Jimenez*, 464 F.3d 555, 558 (5th Cir. 2006). Where there is no constitutional violation, we will not find an abuse of the trial court's discretion absent "a showing that the limitations were clearly prejudicial." *United States v. Skelton*, 514 F.3d 433, 438 (5th Cir. 2008) (citation omitted).

The Confrontation Clause guarantees a defendant's right to cross-examine his accusers. *Jimenez*, 464 F.3d at 559. The right is not unlimited. *Id*. What is required is that defense counsel be "permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *United States v. Hitt*, 473 F.3d 146, 156 (5th Cir. 2006) (citation omitted). The district court has discretion to place reasonable limits on "a criminal defendant's right to cross-examine a witness based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id*. (quotation marks and citations omitted). To determine if a Sixth Amendment violation has occurred, we inquire into "whether the jury had sufficient information to appraise the bias and motives of the witness." *United States v. Tansley*, 986 F.2d 880, 886 (5th Cir. 1993).

Prior to trial, the government filed a motion in limine seeking to preclude Diaz from introducing testimony regarding his status as an illegal immigrant. The motion specifically targeted Diaz's proposed voir dire questions, which sought to inquire about prejudices of prospective jurors towards illegal

3

immigrants. During a pretrial hearing, the district court ruled on the motion by allowing Diaz to ask one question during voir dire about bias or animosity towards illegal immigrants or Spanish-speaking individuals. Further, if during trial Diaz's counsel wanted to elicit testimony about Diaz's immigration status, he was to approach the bench and seek a final determination as to whether his status was material to the case.

Later during the pretrial hearing, Diaz's counsel again presented arguments about immigration status. He wanted to question government witnesses as to what their investigation revealed about reasons Diaz might have been present at the drug transaction. Counsel assured the district court, "I don't want to get into that issue about his immigration status" unless a witness were to describe Diaz as acting nervously. The district court restated the requirement of approaching the bench for a ruling on the propriety of that line of questioning. The court indicated that if the government had not opened the door to the issue, Diaz would not be permitted to pursue the issue because it was either irrelevant or more confusing and prejudicial than probative.

At trial, Agent De La Cruz testified that Diaz was at the scene of the drug transaction "as a lookout," and that he observed Diaz "seeing side to side, making sure no vehicles were coming." Diaz's counsel objected. Jurors were excused. Counsel argued that this testimony opened the door to inquiries about Diaz's status as an illegal immigrant. He wanted to cross-examine Agent De La Cruz about whether Diaz's behavior might have been "consistent with someone who was not looking out for a drug transaction but looking out for police on his own behalf." The district court ruled that the question could be asked but disallowed questions about Diaz's immigration status. The question counsel identified in this exchange was not asked during cross-examination.

In examining for reversible error, we do not find that the district court barred inquiries into witness credibility or reliability, issues that are the

touchstone of cross-examination rights protected by the Confrontation Clause. *See Hitt*, 473 F.3d at 156.  The first ruling, made during the hearing on the government's motion in limine, was that Diaz's immigration status was either irrelevant or more confusing and prejudicial than probative. *See* Fed. R. Evid. 402, 403.  The district court, though, explicitly allowed counsel an opportunity during trial to approach the bench to reargue the propriety of asking questions about Diaz's immigration status.  At trial, Diaz sought a bench conference on this issue only during Agent De La Cruz's testimony.  In this situation, the district court granted Diaz what he requested, which was permission to ask whether Diaz's behavior was consistent with someone looking out for himself, not as part of a drug transaction.  At that time, the district court specifically stated that counsel could not ask questions about Diaz's immigration status.  In light of the district court's willingness to permit Diaz to ask the one question, though, such testimony would have added no additional weight to the jury's view of Agent De La Cruz's reliability or credibility as a witness.

Diaz's primary motive in seeking to elicit testimony about his immigration status appears to have been to support the theory that he was present at the drug transaction only because he was looking for Immigration and Customs Enforcement officials.  Though there is a right to cross-examine witnesses about the defense theory of the case, the Sixth Amendment is not its source. *See Hitt*, 473 F.3d at 156.  The district court's limitation did not prevent the jury from receiving information to appraise the biases and motives of witnesses.  Diaz's Sixth Amendment rights were not violated. *See Tansley*, 986 F.2d at 886.

We also examine whether the trial court's restrictions on cross-examination were so prejudicial as to result in an abuse of discretion. *See United States v. Restivo*, 8 F.3d 274, 278 (5th Cir. 1993); *United States v. Hawkins*, 661 F.2d 436, 444 (5th Cir. 1981).  Prejudice would be shown if "a reasonable jury might have had a significantly different impression of the

witness's credibility if defense counsel had been allowed to pursue the questioning." *United States v. Davis*, 393 F.3d 540, 548 (5th Cir. 2004) (citation omitted). Here, Diaz's immigration status has some relevance because it provides an alternate explanation for his perceived actions, namely, that he had a reason to be looking out for law enforcement because of fear of arrest or deportation. Nevertheless, given the other evidence, including Harry Fernandez's testimony that Diaz worked for Banegas as a lookout for the police, we cannot say that the restriction was prejudicial. In addition, we have already noted that the district court permitted Diaz to question Agent De La Cruz about the possibility that Diaz was acting "as a lookout" for reasons other than the drug transaction. Diaz, however, never asked the permitted question. Nothing in the evidence even suggests that Agent De La Cruz had personal knowledge of Diaz's immigration status.

Lastly, the record does not reveal that the district court limited Diaz's cross-examination related to Diaz's possible employment at Brian's Auto Sales. Diaz argues that evidence of his employment would have been relevant to explain why he was at this location late at night. The only time a question about Diaz's employment at Brian's Auto Sales was asked, the district court properly sustained an objection on hearsay grounds. *See* Fed. R. Evid. 802; *Butler v. S. Pac. Co.*, 431 F.2d 77, 80 (5th Cir. 1970). Diaz's counsel rephrased the question to ask whether the witness had personal knowledge that Diaz worked at Brian's Auto Sales. The witness was permitted to answer.

There was no error on these issues.

## II.    *Mental State Testimony*

Diaz contends that the district court abused its discretion by permitting Agent De La Cruz to testify that Diaz was at the scene of the drug transaction "as a lookout." According to Diaz, this testimony functioned as an expert opinion of Diaz's mental state in violation of Federal Rule of Evidence 704(b).

"Where the party challenging the trial court's evidentiary ruling makes a timely objection, we review the ruling under an abuse of discretion standard." *United States v. Sumlin*, 489 F.3d 683, 688 (5th Cir. 2007). If this court finds error, we review for whether there was harm. *Id.* "'Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.'" *Id.* (quoting Fed. R. Crim. P. 52(a)). "An error affects substantial rights if there is a reasonable probability that the improperly admitted evidence contributed to the conviction." *Id.* (citations omitted). Without a reasonable probability, this court is not required to reverse a conviction. *Id.*

Lay witnesses also may give opinion testimony about a defendant's mental state. *See* Fed. R. Evid. 701; *United States v. McMillan*, 600 F.3d 434, 456 (5th Cir. 2010). The opinions are not expert ones but are "based on the witness's perception and that are helpful in understanding the testimony or in determining a fact in issue . . . ." *McMillan*, 600 F.3d at 456 (citations omitted).

After testifying that Diaz was "a lookout," Agent De La Cruz testified that he saw Diaz "standing in between the trailer and the van, seeing side to side, making sure no vehicles were coming." This testimony did not rest upon scientific, technical, or specialized knowledge. Instead, it was an observation that "result[ed] from a process of reasoning familiar in everyday life . . . ." *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) (quotation marks and citations omitted).

Other circuits in unpublished opinions have upheld testimony from law enforcement officers that a defendant acted as a lookout. *See United States v. Valdez-Reyes*, 165 Fed. App'x 387, 391-93 (6th Cir. 2006) (unpublished); *United United States v. Hernandez*, 45 Fed. App'x 686, 690-91 (9th Cir. 2002) (unpublished). Where the testimony is "based on [an officer's] personal perceptions of defendant's conduct . . . [t]he district court could legitimately conclude in exercising its discretion that the opinion testimony would clarify for

the jury that the officer[] believed defendant was more than a disinterested observer . . . ." *Valdez-Reyes*, 165 Fed. App'x at 392. This reasoning is convincing. Agent De La Cruz's testimony was based upon his personal perception of Diaz's conduct and would clarify for the jury how Diaz appeared to be acting.

Diaz contends that caselaw supports the principle that when government agents testify that presence at a drug transaction indicates an awareness of drugs, they are offering improper expert testimony of a defendant's mental state, or the functional equivalent of such testimony. *See, e.g., United States v. Mendoza-Medina*, 346 F.3d 121, 127-29 (5th Cir. 2003); *United States v. Ramirez-Velasquez*, 322 F.3d 868, 879 (5th Cir. 2003); *United States v. Gutierrez-Farias*, 294 F.3d 657, 662-63 (5th Cir. 2002). In these cases, however, the officers were offered as expert witnesses, and the impermissible portion of their testimony concerned "drug courier profiles," whereby their testimony clearly suggested that "because most drivers know there are drugs in their vehicles, [the defendant] must have known too." *Mendoza-Medina*, 346 F.3d at 128-29; *Gutierrez-Farias*, 294 F.3d at 663. Such testimony amounted to the "functional equivalent" of "a forbidden opinion on the ultimate legal issue in the case." *Gutierrez-Farias*, 294 F.3d at 663 (quotation marks and citations omitted). There was no indication that Agent De La Cruz's testimony extrapolated Diaz's behavior from the witness's supposed expert knowledge of the behavior of others. Rather, Agent De La Cruz testified that Diaz was acting "as a lookout" because of Diaz's behavior – standing near a drug transaction, looking side to side, and observing potential street traffic.

Agent De La Cruz's testimony was admissible opinion testimony under Federal Rule of Evidence 701. Even if the district court did err in some way, though, it was a harmless error in light of the remaining overwhelming evidence,

No. 10-10544

which we discuss below. *See United States v. Setser*, 568 F.3d 482, 494-95 (5th Cir. 2009). The district court did not abuse its discretion.

III.    *Jury Instruction Omission*

Diaz argues the district court committed reversible error by providing the jury with erroneous instructions. During a three to five minute period, the jury was outside the courtroom, beginning to deliberate with instructions that omitted one word from the Fifth Circuit pattern jury instructions. From all indications, the omission resulted from inadvertence. The error was noted soon after the jurors left the courtroom; jurors were immediately brought back and given a corrected version of the jury instructions.

Diaz contends that he first objected to the instruction during the government's rebuttal argument. After the government quoted the erroneous instruction, Diaz's counsel interrupted the rebuttal. He then quizzically repeated what the government had said. The trial judge stated that she had not heard what the government said and requested he rephrase the statement. The government then said, "I'm reading from the charge, Your Honor." It was not until after the jury had been instructed to deliberate and the district court was charging the alternate juror that Diaz's counsel raised a specific objection to the jury charge.

Where a party fails to offer a timely objection to jury instructions, claims of error are reviewed for plain error. *Jones v. United States*, 527 U.S. 373, 388-89 (1999). "A plain error is a forfeited error that is clear or obvious and affects the defendant's substantial rights." *United States v. Cruz-Rodriguez*, 625 F.3d 274, 276 (5th Cir. 2010)(citation omitted). "When those elements are shown, this court has the discretion to correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation marks and citation omitted).

No. 10-10544

Diaz contends that this court ought to apply an abuse of discretion standard. Diaz did not, however, offer a specific objection until after the jury had begun deliberating. *See* Fed. R. Crim. P. 30(d); *Jones*, 527 U.S. at 387-88. Thus, we review for plain error. *See Jones*, 527 U.S. at 389.

Under a plain error analysis, we first inquire into whether error even occurred. *Id.* Where a party alleges jury confusion as a result of incorrect jury instructions, this court considers "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Id.* at 390 (quotation marks and citations omitted). To make this determination, we look at the alleged error, which occurred on page nine of an 11-page document.

The original jury instruction omitted the word in brackets, while the corrected one inserted it:

> If a defendant understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict him for conspiracy even though the defendant had not participated [before] and even though the defendant played only a minor part.

The sentence as originally written is not internally consistent, first stating a defendant did not have to participate, then stating a defendant could have "played only a minor part." Stepping back from the caselaw as argued by the defendant, we find it sufficient to sustain the district court's action that the error was quickly caught and corrected. This case is not one in which the jurors arguably reached a result based on a flawed but perhaps harmless omission. The only alleged error is that jurors for a few minutes possessed an erroneous instruction. There was no reason for the district court on these facts to declare a mistrial and start over after the error was corrected.

We now turn to the Supreme Court's opinion in *Jones*. *Id.* We are not to focus only on the location of an erroneous jury instruction, but we look at "the

10

context of the entire charge." *Id.* at 391 (citations omitted).  It is particularly informative that immediately preceding the sentence in question was a recitation of the four elements of the charged crime, spelling out the extent of participation required to convict.  They read:

| | |
|---|---|
| *First*: | That two or more persons, directly or indirectly, reached an agreement to possess with intent to distribute or distribute marijuana; |
| *Second*: | That the defendant knew of the unlawful purpose of the agreement; |
| *Third*: | That[] the defendant joined in the agreement willfully, that is, with the intent to further its unlawful purpose; and |
| *Fourth*: | That the overall scope of the conspiracy involved at least 100 kilograms or more of a mixture or substance containing a detectible amount of marijuana. |

Viewing the entire charge as a whole and taking into account the brief period in which the jury deliberated under this charge, we do not find "a reasonable likelihood that the jury . . . applied the challenged instruction in a way that violates the Constitution."  *Id.* at 390 (quotation marks and citations omitted).  The district court did not commit reversible error.

IV.   *Sufficiency of the Evidence*

Diaz alleges that evidence of his presence at the scene of the drug transaction did not establish his voluntary participation in the conspiracy.

A challenge to the sufficiency of the evidence that is procedurally preserved, as this challenge was, is reviewed *de novo*.  *See United States v. Ollison*, 555 F.3d 152, 158 (5th Cir. 2009). Viewing all the evidence and drawing all inferences and credibility determinations in the light most favorable to the verdict, we determine whether "a rational jury could have found that the evidence established the elements of the offense beyond a reasonable doubt." *Id.* (quotation marks and citation omitted).

No. 10-10544

Conviction for conspiracy to distribute marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(vii), requires proof of (1) an agreement between two people to distribute marijuana in violation of the law; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the conspiracy. *United States v. Booker*, 334 F.3d 406, 409 (5th Cir. 2003).

Diaz challenges only the third element, whether he voluntary participated in the conspiracy. A defendant's voluntary participation in a conspiracy "may be inferred from the development and collocation of circumstances." *United States v. Maltos*, 985 F.2d 743, 746 (5th Cir. 1992) (quotation marks and citation omitted). If all that was shown was a defendant's "mere presence at the crime scene or close association with conspirators," jurors would not be entitled to infer participation in the conspiracy. *Id.*

We review the relevant evidence. Harry Fernandez, a member of Banegas, testified that Diaz worked in the organization as a lookout for police. He further testified that the day before the drug transaction, five members of Banegas, including Diaz, met to discuss their responsibilities. Diaz's role was to be a lookout. He was to stand at the street corner between the tractor-trailer and Brian's Auto Sales. Diaz also would use a Ford F-150 to transport some the marijuana to a stash house. Diaz carried the keys to this vehicle.

Fernandez testified that during the drug transaction, Diaz performed his assigned role as a lookout "to make sure no police came." Donnie Morton, an officer with the Fort Worth Police Department and a member of the Drug Enforcement Agency Task Force, testified that he saw Diaz standing at the street corner, 30 feet from the 18-wheeler, "very diligently observing us drive by." Another Forth Worth police officer, Tim Kasterke, testified that he saw Diaz standing in the doorway of a vehicle, and that when Officer Kasterke drove past, he noticed Diaz watching him.

12

No. 10-10544

Agent De La Cruz testified that he saw Diaz "standing in between the trailer and the van, seeing side to side, making sure no vehicles were coming. And once in a while he would glance back and see me giving [a member of Banegas] the duffle bags of marijuana." Agent De La Cruz further testified the back of the van was four feet away from the tractor-trailer rig, and Diaz was present while the marijuana was unloaded. He also testified Diaz closed the doors of the van after the marijuana had been transferred.

Officer Morton testified that after the transaction had occurred, members of Banegas, including Diaz, were detained. Officer Kasterke testified that he retrieved from Diaz a set of keys to a Ford F-150.

This evidence established that Diaz voluntarily participated in the conspiracy, not only by inference "from the development and collocation of circumstances[,]" but by evidence that went beyond Diaz's "mere presence at the crime scene or close association with conspirators . . . ." *Id.* at 746 (quotation marks and citations omitted). Thus, viewing all the evidence in the light most favorable to the verdict, we find that "a rational jury could have found that the evidence established the elements of the offense beyond a reasonable doubt." *Ollison*, 555 F.3d at 158 (quotation marks and citation omitted).

V.     *Substantive Reasonableness of Sentence*

Diaz argues his 121-month sentence was substantively unreasonable. He contends it did not take into account his personal history and the need to avoid unwarranted sentencing disparities between similarly-situated defendants.

We apply an abuse of discretion standard in reviewing the substantive reasonableness of a sentence. *United States v. Brantley*, 537 F.3d 347, 349 (5th Cir. 2008). We consider the totality of the circumstances, granting "deference to the district court's determination of the appropriate sentence based on the § 3553(a) factors," and we "may not reverse the district court's ruling just because [we] would have determined that an alternative sentence was appropriate." *Id.*

13

(citation omitted). In fact, we grant a within-Guidelines sentence a presumption of reasonableness. *United States v. Campos-Maldonado*, 531 F.3d 337, 339 (5th Cir. 2008). "The presumption is rebutted only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors." *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009) (citation omitted).

The district court concluded, based upon the pre-sentence report, that Diaz was subject to a Sentencing Guidelines range of 121 to 151 months of imprisonment. After considering the Section 3553(a) factors, including that Diaz was relatively young, an older individual pulled him into the conspiracy, he came from a good family, and he had witnessed tragic circumstances growing up, the district court determined that 121 months of imprisonment was fair under the circumstances.

Diaz has failed to rebut the presumption of reasonableness we afford a within-Guidelines sentence. The district court did take into account Diaz's personal history. In addition, avoiding unwarranted general sentencing disparities is not a factor that we grant significant weight where the sentence is within the Guidelines range. *See United States v. Willingham*, 497 F.3d 541, 544-45 (5th Cir. 2007). Thus, we do not find that Diaz's sentence was substantively unreasonable.[1]

AFFIRMED.

---

[1] In a letter filed by Diaz under Fed. R. App. P. 28(j), four additional claims are raised. The initial claim is said to derive from an "intervening" opinion by this court that held a defendant was denied his right to a fair trial due to the aggregate effect of non-reversible errors. *United States v. Delgado*, 631 F.3d 685, 698 (5th Cir. 2011). This principle, though, was not first announced in *Delgado. E.g., United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998) (collecting cases). Further, "we generally do not address issues not raised in initial appellate briefs." *United States v. Lewis*, 412 F.3d 614, 616 (5th Cir. 2005). The final three claims relate to issues that were not previously challenged or briefed, and we do not consider them. *See United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001).