# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-40284

United States Court of Appeals
Fifth Circuit

**FILED**

July 8, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

STEPHEN SHANE HALL,

Defendant–Appellant.

Appeals from the United States District Court
for the Eastern District of Texas
USDC No. 1:13-CR-112

Before WIENER, PRADO, and OWEN, Circuit Judges.

PER CURIAM:*

Defendant–Appellant Stephen Shane Hall challenges the district court's denial of his motion to suppress evidence obtained in connection with a search warrant executed at a residence in Orange, Texas. Hall also challenges the sufficiency of the evidence to support his convictions for (1) conspiracy with intent to distribute methamphetamine under 21 U.S.C. § 846; (2) possession of a controlled substance with intent to distribute methamphetamine under 21

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No.15-40284

U.S.C. § 841(a)(1); and (3) felon in possession of a firearm under 18 U.S.C. § 922(g)(1). We AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Around March 2013, the Narcotics Unit of the Orange County Sheriff's Office ("Narcotics Unit") began investigating Hall for suspected methamphetamine trafficking. As part of this investigation, officers with the Narcotics Unit placed a surveillance camera outside a house in Orange, Texas, ("the House") where they believed Hall resided. Over the course of the investigation, officers observed "unusual traffic" at the House that they thought was indicative of narcotics trafficking.

On August 31, 2013, Sergeant Shawn Wilson told Lieutenant Robert Strause of the Narcotics Unit that he had received a tip from a confidential informant that methamphetamine had been delivered to the House. Lieutenant Strause immediately applied for a search warrant ("the Warrant") based on this information. The Warrant was signed by a Texas state judge and executed that night.

While executing the Warrant, officers recovered approximately 57 grams of methamphetamine. Officers also recovered various drug paraphernalia, including digital scales and hypodermic needles, a safe that contained methamphetamine and money, and several firearms. They also found Hall, along with a coconspirator, rubbing methamphetamine into the carpet of a bedroom.

Each of Hall's coconspirators pled guilty, but Hall proceeded to trial. Prior to trial, Hall filed a motion to suppress any evidence obtained in connection with the Warrant. Following a suppression hearing, a magistrate judge filed a report and recommendation applying the good-faith exception under *United States v. Leon*, 468 U.S. 897 (1984), and recommending that the

motion to suppress be denied. The district court adopted the magistrate judge's recommendation in its entirety.

In August 2014, a jury convicted Hall of (1) conspiracy with intent to distribute methamphetamine under 21 U.S.C. § 846; (2) possession of a controlled substance with intent to distribute methamphetamine under 21 U.S.C. § 841(a)(1);  and (3) felon in possession of a firearm under 18 U.S.C. § 922(g)(1). Hall was sentenced to life imprisonment for the conspiracy and possession charges pursuant to the mandatory minimum provided by 21 U.S.C. § 841(b)(1)(A) and was sentenced to 120 months on the felon in possession charge to be served concurrently. Hall timely appealed.

## II. DISCUSSION

Hall raises several discrete issues on appeal. First, he challenges the district court's denial of his motion to suppress evidence obtained in connection with the Warrant. Next, he challenges the sufficiency of the evidence as to each of his three convictions.

### A.     Motion to Suppress

Hall makes multiple challenges to the district court's application of the good-faith exception and the subsequent denial of his motion to suppress. In an appeal of a suppression ruling, this Court "reviews questions of law *de novo* and questions of fact for clear error." *United States v. Cooke*, 674 F.3d 491, 493 (5th Cir. 2012). A finding of fact is "clearly erroneous only if the court is left with a definite and firm conviction that a mistake has been committed." *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010). Evidence introduced at a suppression hearing is viewed "in the light most favorable to the prevailing party (here, the government)." *Cooke*, 674 F.3d at 493. The district court's ruling will be upheld "if there is any reasonable view of the evidence to support it." *Id.* (quoting *United States v. Michelletti*, 13 F.3d 838, 841 (5th Cir. 1994) (en banc)).

No.15-40284

When reviewing the denial of a motion to suppress, this Court conducts a two-step analysis. First, we must determine whether the good-faith exception to the exclusionary rule applies. *United States v. Massi*, 761 F.3d 512, 525 (5th Cir. 2014). "The good faith exception to the exclusionary rule provides that 'evidence obtained during the execution of a warrant later determined to be deficient is nonetheless admissible if the executing officer's reliance on the warrant was objectively reasonable and made in good faith.'" *Id.* (quoting *United States v. Woerner*, 709 F.3d 527, 533 (5th Cir. 2013)). Second, we must determine whether the magistrate judge "had a substantial basis for . . . concluding that probable cause existed." *Id.* (alteration in original) (quoting *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1129 (5th Cir. 1997)). If we conclude that the district court was correct in applying the good-faith exception, then we need not address the second step. *Id.*

Hall argues that the good-faith exception does not apply to the Warrant because it contains a false statement. "The good-faith exception to the exclusionary rule does not apply if the warrant affidavit contains a false statement that was made intentionally or with reckless disregard for its truth." *United States v. Cavazos*, 288 F.3d 706, 709–10 (5th Cir. 2002) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)). If a defendant establishes that a false statement was made either intentionally or with reckless disregard for the truth by a preponderance of the evidence, "we must then excise the offensive language from the affidavit and determine whether the remaining portion would have established the necessary probable cause." *Id.* at 710.

In his warrant affidavit, Lieutenant Strause stated that "[w]ithin the past 72 hours Affiant had the occasion to interview a reliable confidential informant regarding Stephan Shane Hall" and that the informant told him that there was methamphetamine at the House. But, at a suppression hearing, Lieutenant Strause admitted that another officer, Sergeant Shawn Wilson,

4

had been the one who actually interviewed the confidential informant. Accordingly, Lieutenant Strause's statement that he had interviewed the informant was false.

But, for a false statement to prevent application of the good-faith exception, the statement must be made with the requisite mens rea, i.e., either intentionally or with reckless disregard for the truth. *See Cavazos*, 288 F.3d at 709–10. In adopting the magistrate judge's report and recommendation, the district court found Lieutenant Strause's testimony that the false statement was simply a mistake "credible and uncontroverted," implicitly finding that Lieutenant Strause did not act with the requisite culpability.

"We review for clear error the district court's finding that an affiant's statements were not deliberately false or not made with reckless disregard for the truth." *United States v. Thomas*, 627 F.3d 146, 159 (5th Cir. 2010). Because we find Lieutenant Strause's explanation that the false statement was a mistake to be plausible, and Hall has failed to demonstrate that the district court's finding on Lieutenant Strause's mens rea was clear error, we conclude that Lieutenant Strause's false statement does not prevent application of the good-faith exception. *See United States v. Tillman*, 84 F. App'x 464, 465 (5th Cir. 2004) (per curiam).

Hall similarly argues that the good-faith exception does not apply to the Warrant because the residence described in the Warrant was not the residence actually searched. The good-faith exception does not apply when a "warrant [is] so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 899. The Warrant stated that the residence to be searched was "located at 352 Spooner, Bridge City, Orange County, Texas 77611." The house is actually located at "352 Spooner, Orange, Texas 77630."

No.15-40284

In adopting the magistrate judge's report and recommendation, the district court rejected this argument, explaining that "[b]ecause Strause was both the affiant and the executing officer and had conducted surveillance on the home, 'there was no possibility the wrong premises would be searched.'" We agree. In light of the executing officer's ongoing involvement with the case, we cannot say that the technical errors in the address render the warrant "so facially deficient" "that the executing officers [could not] reasonably presume it to be valid." *Leon*, 468 U.S. at 899. Therefore, we conclude that the technical errors in the address do not prevent application of the good-faith exception.

Hall also argues that the Warrant is insufficient because the House was searched before the Warrant was actually issued. The Warrant was issued by a Texas state judge at 9:45 p.m. on August 31, 2013. Lieutenant Strause's report indicates that the House was entered at 9:11 p.m., before the Warrant was signed. But, at the suppression hearing, Lieutenant Strause testified that the Warrant was not actually executed until 10:11 p.m., twenty-six minutes after it was signed. In adopting the magistrate judge's report and recommendation, the district court found Lieutenant Strause's testimony "credible." On appeal, Hall has pointed to no evidence in the record indicating that the police entered the home before the Warrant was signed and that the discrepancy in timing was anything more than a typographical error that would not prevent application of the good-faith exception.[1]

Although the Warrant contained several such errors or mistakes, we cannot say that "the technical sufficiency of the warrant" was objectively

---

[1] On appeal, Hall raises several arguments that he failed to include in his motion to suppress. He argues that the Warrant's return and inventory was sworn to twenty-eight days before the Warrant was executed. He also disputes the physical description of the House in the Warrant affidavit and argues that the Warrant is deficient because the house searched was actually owned by his wife, Misty Hall. But, because Hall did not include these arguments in his motion to suppress, they are waived. *See United States v. Pope*, 467 F.3d 912, 918–19 (5th Cir. 2006).

unreasonable. *United States v. Gibbs*, 421 F.3d 352, 358 (5th Cir. 2005). Consequently, the district court did not reversibly err in applying the good-faith exception, and the denial of Hall's motion to suppress is affirmed.

## B.    Sufficiency of the Evidence

Hall challenges the sufficiency of the evidence for his three convictions. While Hall moved for a directed verdict of not guilty on each count at the end of the Government's case, he did not renew the motion at the close of the case. Therefore, we review his sufficiency arguments "only for a manifest miscarriage of justice."[2] *United States v. Salazar*, 542 F.3d 139, 142 (5th Cir. 2008). Under this standard, Hall "must show either that the record is 'devoid of evidence of guilt' or that the evidence is 'so tenuous that a conviction is shocking.'" *Id.* (quoting *United States v. Avants*, 367 F.3d 433, 449 (5th Cir. 2004)). "[A]s is done under the standard of review employed when a sufficiency challenge is properly preserved, the evidence must be considered 'in the light most favorable to the government, giving the government the benefit of all reasonable inferences and credibility choices.'" *Id.* at 142–43 (quoting *United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007)).

### 1.  Conspiracy with Intent to Distribute Methamphetamine

In order to sustain a conviction for conspiracy with intent to distribute methamphetamine under 21 U.S.C. § 846, the Government must prove beyond a reasonable doubt "(1) an agreement between two or more persons to violate the narcotics laws, (2) the defendant's knowledge of the agreement, and (3) the defendant's voluntary participation in the conspiracy." *United States v. Zamora*, 661 F.3d 200, 209 (5th Cir. 2011) (quoting *United States v. Booker*, 334 F.3d 406, 409 (5th Cir. 2003)). Hall argues that the Government has failed

---

[2] Although neither party recognizes this error, "we, not the parties, determine our standard of review." *Sundown Energy, L.P. v. Haller*, 773 F.3d 606, 611 (5th Cir. 2014) (quoting *United States v. Clark*, 89 F. App'x 453, 456 (5th Cir. 2004)).

to prove each of the necessary elements of this crime. He argues that, at most, the Government established that he was found "at the scene of a drug transaction" but that this fact alone is insufficient to prove he was involved in a conspiracy.

To participate in a conspiracy,"[a]n express agreement is not required; a tacit, mutual agreement with common purpose, design, and understanding will suffice." *United States v. Lewis*, 476 F.3d 369, 383 (5th Cir. 2007) (quoting *United States v. Turner*, 319 F.3d 716, 721 (5th Cir. 2003)). "A jury may 'infer the existence of an agreement [to a conspiracy] from . . . testimony and the other circumstantial evidence.'" *Zamora*, 661 F.3d at 209 (alterations in original) (quoting *United States v. Garcia*, 567 F.3d 721, 732 (5th Cir. 2009)). If the only thing that is shown is a defendant's "'mere presence at the crime scene or close association with conspirators,' jurors would not be entitled to infer participation in the conspiracy." *United States v. Diaz*, 637 F.3d 592, 602 (5th Cir. 2011) (quoting *United States v. Maltos*, 985 F.2d 743, 746 (5th Cir. 1992)).

In light of the evidence presented at trial, Hall's conviction for conspiracy with intent to distribute methamphetamine did not result in a "manifest miscarriage of justice." *Salazar*, 542 F.3d at 142. At trial, Lieutenant Strause testified about the surveillance of the House leading up to the execution of the Warrant and the activity around the House that he believed was indicative of narcotics trafficking. Lieutenant Strause also testified that he and his fellow officers ran the license plates of cars that came to the House and found that many of the cars' owners had prior methamphetamine possession charges. In fact, officers conducted traffic stops on at least two individuals after they left the House, including Hall's wife, and found them in possession of either methamphetamine or methamphetamine paraphernalia.

At trial, the Government also introduced evidence that officers found approximately 57 grams of methamphetamine in the House. Lieutenant Strause testified that such an amount was indicative of a distribution operation. Drug paraphernalia was also found throughout the House, including digital scales and hypodermic needles. Contradicting Hall's argument that he was merely "at the scene of a drug transaction," an officer testified that he found Hall and a coconspirator rubbing methamphetamine into the carpet of a bedroom when law enforcement arrived.

Further supporting his conviction, the Government introduced several incriminating statements that Hall made to law enforcement following his arrest. For example, the Government introduced a recording of the following exchange between Hall and Lieutenant Strause:

> Hall: He, he, he wanted to have a place to come so he could stop halfway between and then see who he had to see right there in that area and then go on further into Louisiana and we needed the extra money for the truck and . . .
>
> Lieutenant Strause: So he was coming from wherever he picked the dope up at . . . well theoretically, and stopped off at your house to do what he needed to do bag it up, weigh, whatever then go on to where he was taking the dope to. Is that what you're saying?
>
> Hall: Yes, damn it.

In light of the evidence introduced at trial, we cannot say that the record "is 'devoid of evidence of guilt.'" *Salazar*, 542 F.3d at 142 (quoting *Avants*, 367 F.3d at 449). The direct and circumstantial evidence presented was sufficient for the jury to infer the existence of a conspiracy between Hall and the other individuals in the House to distribute methamphetamine. *See Garcia*, 567 F.3d at 732. Therefore, it is not a manifest miscarriage of justice for the jury to convict Hall of conspiracy with intent to distribute methamphetamine under 21 U.S.C. § 846.

## 2.  Possession with Intent to Distribute Methamphetamine

To sustain a conviction for possession with intent to distribute methamphetamine under 21 U.S.C. § 841(a)(1), the Government must prove beyond a reasonable doubt that the defendant knowingly possessed a controlled substance, in this case methamphetamine, which he intended to distribute. *United States v. Delgado*, 256 F.3d 264, 274 (5th Cir. 2001). The defendant's "[p]ossession may be actual or constructive, may be joint among several defendants, and may be proved by direct or circumstantial evidence." *United States v. Valdiosera-Godinez*, 932 F.2d 1093, 1095 (5th Cir. 1991) (quoting *United States v. Gardea Carrasco*, 830 F.2d 41, 45 (5th Cir. 1987)). "Constructive possession is 'the knowing exercise of, or the knowing power or right to exercise, dominion and control over the proscribed substance.'" *Id.* (quoting *Gardea Carrasco*, 830 F.2d at 45).

Hall argues that because the evidence is legally insufficient as to the conspiracy count, the evidence is legally insufficient as to the possession count. As noted above, officers found a quantity of methamphetamine consistent with a distribution operation and various drug paraphernalia in the House. Officers with the Narcotics Unit had observed traffic in and out of the House that was consistent with narcotics trafficking. Hall also admitted to involvement with the methamphetamine in his statements to Lieutenant Strause.

Accordingly, the record was not devoid of evidence that Hall had, at a minimum, constructive possession of the narcotics seized from the House and the intent to distribute them. *See Salazar*, 542 F.3d at 142–43; *United States v. Cardenas*, 748 F.2d 1015, 1019 (5th Cir. 1984). As such, it was not a manifest miscarriage of justice for the jury to convict Hall of possession with intent to distribute methamphetamine under 21 U.S.C. § 841(a)(1).

### 3. Felon in Possession of a Firearm

To obtain a conviction for felon in possession of a firearm under 18 U.S.C. § 922(g)(1), the Government must prove beyond a reasonable doubt "(1) that the defendant previously had been convicted of a felony; (2) that he knowingly possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce." *United States v. Meza*, 701 F.3d 411, 418 (5th Cir. 2012). Possession may be actual or constructive and may be proven by circumstantial evidence. *Id.* at 419. "'Constructive possession' may be found if the defendant had (1) ownership, dominion or control over the item itself or (2) dominion or control over the premises in which the item is found." *Id.*

Hall only challenges the sufficiency of the Government's evidence on the second element. Hall was indicted under 18 U.S.C. § 922(g)(1) for possession of a specific firearm, "a Derringer, Model Frontier EX 3A, .22 caliber two shot pistol, bearing serial number 39430," which was found in a backpack in the House. But, this Court has previously held that a specific type of weapon is not an essential element of a conviction for felon in possession and "a variance in the type of weapon charged in the indictment with the evidence adduced at trial is not a material constructive amendment that requires vacating a conviction." *United States v. Guidry*, 406 F.3d 314, 322 (5th Cir. 2005); *see also United States v. Munoz*, 150 F.3d 401, 416–17 (5th Cir. 1998). Therefore, to obtain a conviction for felon in possession of a firearm, the Government only needed to demonstrate that Hall had at least constructive possession of one of the firearms found at the House.

On appeal, Hall denies ownership of the backpack and the Derringer pistol and argues that both "belonged to another individual, as mail addressed to another individual was discovered inside the backpack along with the firearm." Two other firearms—a rifle and a semi-automatic pistol—were found in the House's garage hidden under a shower curtain on the passenger seat of

a Ford F150. The truck was lifted by hydraulic jacks, and part of the front of the vehicle had been removed. Hall argues that the evidence is insufficient to demonstrate he possessed these guns because the Government failed to establish how long they had been in the truck and whether Hall knew they existed.

Demonstrating that an individual exercised dominion or control over the residence in which a firearm is found is typically sufficient to demonstrate constructive possession of the firearm. *See Meza*, 701 F.3d at 419. At trial, the Government demonstrated that Hall exercised dominion and control over the House, including the truck parked and rendered inoperable in the garage. Officers had observed Hall coming and going from the House for some time and found his clothes and other personal items in a bedroom of the House. *See, e.g.*, *United States v. Onick*, 889 F.2d 1425, 1430 (5th Cir. 1989) (finding a defendant exercised dominion and control over a residence because his papers, clothes, and prescription bottles were found in the home).

Viewing the evidence in the light most favorable to the Government, with all reasonable inferences directed to the jury's verdict, the record is not devoid of evidence that Hall possessed one of the firearms found in the House. *See Salazar*, 542 F.3d at 142. Therefore, it was not a manifest miscarriage of justice for the jury to convict Hall of felon in possession of a firearm under 18 U.S.C. § 922(g)(1).

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Hall's motion to suppress and AFFIRM his three convictions.