# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 22, 2022

Lyle W. Cayce
Clerk

No. 22-40073

United States of America,

*Plaintiff—Appellee*,

*versus*

Adam P. Runsdorf,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:21-CR-112-10

Before Davis, Jones, and Elrod, *Circuit Judges*.

Per Curiam:[*]

A magistrate judge in the Southern District of Florida issued an order releasing Appellant Adam P. Runsdorf before his impending trial on a number of charges in the Eastern District of Texas. The district court in the Eastern District of Texas then vacated the release order and ordered

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 22-40073

Runsdorf detained.  For the reasons explained below, we AFFIRM the detention order.

## I. BACKGROUND

Runsdorf is the owner and president of Woodfield Pharmaceutical LLC ("Woodfield"), which "holds itself out as a contract manufacturing organization specializing in liquid solutions and offering pharmaceutical outsourcing services including research and development, commercial manufacturing, regulatory support, packaging, and labeling."[1]  The government alleges that, from approximately 2014 to August 2021, a drug trafficking organization "partnered with Woodfield, including Runsdorf and his employees and facilities, for assistance with the development, production, and delivery of misbranded and counterfeit promethazine-codeine cough syrup."[2]

Runsdorf allegedly:

o "met with members of the [drug trafficking organization] multiple times at the Woodfield facilities in Houston, Texas to discuss improvements to the promethazine syrup product[;]"

o "instructed Woodfield employees to comply with the [drug trafficking organization's] request to make the product

---

[1] The company is based in Boca Raton, Florida and operates a manufacturing facility in Houston, Texas.

[2] "Promethazine and promethazine-codeine cough syrup are prescription drugs approved by the FDA for distribution within the United States."  But they "can have tranquilizing and euphoric effects when consumed at higher-than-recommended doses, especially when mixed with alcohol or drugs such as marihuana."  As a result, "[s]ome popular music has glamorized drinking promethazine-codeine cough syrup for its mind-altering effects, and promethazine-codeine has become increasingly popular among recreational drug users in Southeast Texas and elsewhere. Promethazine-codeine cough syrup mixed with a soft drink is sometimes referred to as 'syrup,' 'drank,' or 'lean.'"

No. 22-40073

     indistinguishable from other legitimate promethazine syrup products[;]"

- o "allowed the [drug trafficking organization] access to Woodfield facilities, ensuring a more efficient large-scale production process of the promethazine syrup product[;]" and

- o "requested that the [drug trafficking organization] increase its business with Woodfield by ordering more 'batches' of the promethazine syrup product on a more frequent basis."

The government believes that Runsdorf received between $3,000,000 and $5,000,000 by participating in the alleged counterfeiting scheme. The entire conspiracy allegedly made $52,000,000.

A magistrate judge in the Eastern District of Texas issued a criminal complaint in January 2022 referencing several felonies. Runsdorf was arrested in Boca Raton, Florida four days later.

A magistrate judge in the Southern District of Florida held a detention hearing one week after Runsdorf's arrest. The government argued for Runsdorf's pre-trial detention under 18 U.S.C. § 3142(f)(2)(A) because his wealth and history of travel, the seriousness of the charges, and the potential sentence made him a flight risk. It also urged the court to consider "the nature and seriousness of the danger to any person or the community that would be posed by [Runsdorf's] release." A supervisor from the Drug Enforcement Administration's Houston field office testified at length regarding the criminal complaint's allegations. He also testified that a confidential source told another DEA agent that Runsdorf attempted to flee the country by boat.[3]

---

[3] Runsdorf supposedly told the source that he "was about to travel from Boca Raton to the island of St. Marteen in the Caribbean Sea[,]" and "[t]he source knew that [Runsdorf] owns and operates (with the assistance of a hired captain and crew) a 110-foot

No. 22-40073

The magistrate judge ordered Runsdorf's release pending trial. He reasoned that Runsdorf was neither a flight risk nor a danger to the community. The magistrate judge did, however, separately find that "the weight of the evidence is very strong and . . . the circumstances of the offense are a serious crime, all of which create[d] an inference that [Runsdorf] would have a motive not to appear." The magistrate judge also clarified that:

> Once [Runsdorf] has his first appearance in Texas, the judge in Texas is going to set their own bond. They may adopt my bond, they may adopt their own bond, or they may detain him. All these finites will be taken up with the judge in Texas.
>
> . . . .
>
> I'm just setting a bond to hold us over for a couple of weeks until he can get to Texas.

He then explained that "[u]ntil [a judge in the Eastern District of Texas] release[d] [Runsdorf], [his] order [was] held in abeyance."

The government appealed and moved to stay the magistrate judge's order several days later. The district court in the Eastern District of Texas then held two separate hearings over a period of four days. These hearings included testimony from a DEA agent who testified that that a confidential source told him "that Mr. Runsdorf had been in his words spooked and was fleeing the country for a number of factors."[4] The investigator then

---

superyacht named the 'Marigot' that [he] keeps . . . in Fort Lauderdale, Florida." Runsdorf also "owns a 30-foot Sea Ray boat[.]" The government later clarified that the source had *interpreted* comments by Runsdorf, not that Runsdorf had *stated* that he would flee.

[4] This is the same confidential source referenced by the other DEA agent during the first hearing. The district court, however, stated "that the person who testified [at the first hearing] didn't—he wasn't a person who had spoken with the source like this witness has." And the district court therefore did "not put[] much weight on anything that was said[]" during the first hearing.

No. 22-40073

personally met with the source after their initial conversation and testified that the source's information remained consistent.[5] The source confirmed for a third time on the phone that he "still believed that . . . Runsdorf was preparing to flee[.]"[6] The court next heard testimony from a supervisory deputy United States Marshal,[7] a special agent with the Internal Revenue Service's Criminal Investigations Division,[8] and a DEA task force officer who initially submitted an affidavit to support the criminal complaint.[9] A grand jury indicted Runsdorf on all three charged counts several days after the second hearing. The district court then vacated the magistrate judge's order and entered a pre-trial detention order because Runsdorf posed a risk of flight and a danger to the community. Runsdorf timely appealed.

## II. STANDARD OF REVIEW

This court reviews pretrial detention orders under "a deferential standard of review that we equate to the abuse-of-discretion standard." *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992) (citation omitted). In doing so, the court reviews questions of law *de novo* and factual findings for

---

[5] This meeting occurred several days before Runsdorf's arrest.

[6] This last telephone call occurred nearly a week after Runsdorf's arrest and the day before the initial hearing.

[7] The Marshal's testimony largely concerned his monitoring of Runsdorf's yacht and how difficult it had been to track.

[8] The IRS agent's testimony largely concerned Runsdorf's assets and financial reporting.

[9] The DEA task force officer testified about a conference call one week before Runsdorf's arrest during which nearly a dozen law enforcement officers discussed "possible flight risk information." The general understanding was that Runsdorf would attempt to flee on January 14th, so the task force officer asked local law enforcement to "to conduct spot checks surveillance . . . ." and travelled to Florida. No one was able to find Runsdorf between January 10th and the afternoon of January 13th. Officers then obtained a warrant to begin tracking Runsdorf's phone, which led to his arrest.

clear error. *United States v. Olis*, 450 F.3d 583, 585 (5th Cir. 2006) (citation omitted); *United States v. Aron*, 904 F.2d 221, 223 (5th Cir. 1990) (citations omitted).

## III. DISCUSSION

Runsdorf raises four arguments in favor of reversing the district court's detention order and reinstating the magistrate judge's release order.

First, Runsdorf argues that the district court erred in holding a second full detention hearing and allowing additional testimony and evidence without a showing under 18 U.S.C. § 3142 that the information was unknown at the time of the first hearing. Section 3142(f)(2)(B) provides that a detention hearing "may be reopened . . . at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing . . . ." But the government did not move to reopen the initial detention hearing; it appealed the magistrate judge's release order under 18 U.S.C. § 3145(a)(1). That provision has no new evidence requirement. Indeed, no textual link exists between §§ 3142 and 3145. This first argument therefore fails.

Second, Runsdorf contends that that the district court improperly denied his motion for disclosure of the statements of testifying witnesses under 18 U.S.C § 3500 and Fed. Rules of Crim. Pro. 26.2 and 46. "The district court's administration of discovery rules will not be reversed unless the appellant shows an abuse of discretion that prejudiced his substantial rights." *United States v. Jimenez*, 509 F.3d 682, 694 (5th Cir. 2007) (citing *United States v. Holmes*, 406 F.3d 337, 357 (5th Cir. 2005)). Runsdorf has not articulated how the extensive materials that he sought from the government would have contradicted the testimony relevant to the pre-trial detention

determination, and he therefore fails to show an effect on his substantial rights. *See id.* The second argument is unavailing.

Third, Runsdorf maintains that the district court erred in denying his motion to identify the confidential source who told the DEA about his alleged plans to flee. This court "review[s] alleged violations of the Confrontation Clause of the Sixth Amendment *de novo*, applying a harmless error analysis." *United States v. Diaz*, 637 F.3d 592, 597 (5th Cir. 2011) (citation omitted). "Where there is no constitutional violation, we will not find an abuse of the trial court's discretion absent 'a showing that the limitations were clearly prejudicial.'" *Id.* (quoting *United States v. Skelton*, 514 F.3d 433, 438 (5th Cir. 2008)). Here, the confidential source's information was only one among a number of factors that the district court considered in issuing its detention order. A great deal of other evidence adduced at the hearings demonstrates that the district court acted within its discretion, and that any error attributable to not disclosing the confidential source's identity was ultimately harmless. *See Diaz*, 637 F.3d at 597 (citations omitted). The third argument fails.

Finally, Runsdorf insists that the district court erred by concluding that he posed a flight risk, and that no combination of conditions could reasonably assure his appearance and protect the community. If convicted, Runsdorf faces prison terms of up to 20 years for each charge of trafficking in drugs with a counterfeit mark and conspiring to commit money laundering. He also faces over $5,000,000 in fines if convicted on all counts. The district court emphasized these facts in addition to Runsdorf's substantial assets, access to a yacht, history of international travel, and various other factors. These "[f]actual findings are 'clearly erroneous only if, based on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed.'" *United States v. Barry*, 978 F.3d 214, 217 (5th Cir. 2020) (quoting *United States v. Akins*, 746 F.3d 590, 609 (5th Cir. 2014)). Runsdorf

No. 22-40073

has not met that burden. Based on those factual findings, the district court did not abuse its discretion by concluding that Runsdorf posed a flight risk due to his assets, personal history, and characteristics. *See Rueben*, 974 F.2d 580, 586 (citations omitted). Because Runsdorf poses a flight risk, the court need not address the district court's dangerousness finding.

AFFIRMED.